PEOPLE v HURST

Docket No. 54929. Argued October 10, 1974 (Calendar No. 16).—
Decided January 27, 1976. Rehearing denied 396 Mich 976.

Norwood Hurst and Carolyn Kelker were jointly tried and con-
victed of manslaughter in the death of their daughter by a jury
in Washtenaw Circuit Court, Ross W. Campbell, J. A motion by
the prosecution for a joint trial was granted over the objection
of Hurst's attorney that the defendants' defenses were antago-
nistic. Each defendant had been urged to testify against the
other and Kelker made statements to the police exculpating
herself and incriminating Hurst. Prior to joinder the prosecu-
tion stipulated not to use any statement of either defendant,
but at trial the prosecution used a separate record and offer of
proof to impeach Kelker's testimony with prior inconsistent
statements and to threaten her with a perjury charge. Hurst
appealed, contending the prosecutor misused Kelker's state-
ment. The Court of Appeals, Fitzgerald, P. J., and J. H. Gillis
and P. O. Adams, JJ., affirmed in a memorandum opinion,
stating that the prosecutor's stipulation could not be used by
the defendants as a license to commit perjury (Docket No.
14073). Defendant Hurst appeals. *Held:*

1. A defendant is entitled to a trial separate from a codefend-
ant who, it appears, may testify to exculpate himself and
incriminate the defendant seeking a separate trial.

2. The trial judge erred in ordering a joint trial. Under the
circumstances Hurst was denied a fair trial because, while
neither defendant directly accused the other, the tendency of
the testimony of each was to accuse the other of the child's
death. Therefore, it is unnecessary to decide whether use of
Kelker's statement violated the stipulation.

Reversed and remanded.

Justice Coleman dissented on two grounds:

First, the defendant did not brief the joinder question in

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 6, 7] 75 Am Jur 2d, Trial §§ 17–23.
[4] 75 Am Jur 2d, Trial §§ 876–882.
[5] 5 Am Jur 2d, Appeal and Error § 692 *et seq.*

either the Court of Appeals or the Supreme Court and it is well settled that an issue on appeal is abandoned if the party does not brief that issue.

Second, joinder of defendants for trial is usually within the discretion of the trial court. The defenses were not antagonistic; the jury could have believed Kelker's testimony and found neither of them guilty. Neither Kelker nor Hurst directly accused the other of causing Evelyn's death and there was no abuse of discretion in ordering a joint trial. The real issue in this case was the perjured testimony of Kelker.

OPINION OF THE COURT

1. CRIMINAL LAW—TRIAL—JOINDER—SEVERANCE.

A defendant is entitled to a trial separate from a codefendant who, it appears, may testify to exculpate himself and incriminate the defendant seeking a separate trial.

2. CRIMINAL LAW—TRIAL—JOINDER.

Joinder of criminal defendants for trial is usually within the discretion of the court; the general rule is that a defendant does not have a right to a separate trial.

3. CRIMINAL LAW—TRIAL—JOINDER.

Ordering a joint trial for manslaughter over one defendant's objection was reversible error where the tendency of the testimony of each of the defendants was to accuse the other of causing the death of the victim and the objecting defendant was aware of the codefendant's extrajudicial statements incriminating him and correctly anticipated that if the two were tried jointly the codefendant would testify against him.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER OFFENSES.

An instruction to the jury which suggested that consideration of a lesser offense could not begin if one juror held out for conviction of the offense charged is improper and should be avoided in the future.

DISSENTING OPINION

COLEMAN, J.

5. APPEAL AND ERROR—BRIEFS—ABANDONMENT OF ISSUE.

It is well settled that an issue on appeal is abandoned if the party does not brief and argue that issue.

6. CRIMINAL LAW—TRIAL—JOINDER—DISCRETION.

    *Joinder of defendants for trial is usually within the discretion of the trial court.*

7. CRIMINAL LAW—TRIAL—JOINDER—ANTAGONISTIC DEFENSES.

    *There was no abuse of discretion in ordering a joint trial for manslaughter for defendants whose defenses were not antagonistic where both defendants originally maintained that the victim's injuries were caused by a fall down the steps, the jury could have believed their testimony and found neither of them guilty, and neither defendant directly accused the other of causing the victim's death.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Lynwood E. Noah,* Senior Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Francis L. Ziebot* and *Michael Moran,* of counsel) for defendant.

LEVIN, J. Norwood Hurst and Carolyn Kelker[1] were jointly tried and convicted of manslaughter in the death of their 18-month-old daughter, Evelyn.

Hurst appealed[2] contending the prosecutor misused a separate record and offer of proof to impeach Kelker's testimony with prior inconsistent statements and to threaten her with a perjury charge after he had stipulated, prior to joinder of the two informations for trial, not to use any statement of either defendant.

The Court of Appeals, stating that the prosecu-

---

[1] Kelker and Hurst were married after Evelyn's death and before the trial. For clarity, Mrs. Hurst will be referred to as Kelker in this opinion.

[2] Hurst was sentenced to a term of imprisonment. Kelker was placed on probation.

tor's stipulation could not be used by the defendants as a license to commit perjury, affirmed.

We conclude that the trial judge erred in ordering a joint trial and it is, therefore, unnecessary to decide whether the prosecutor's use of Kelker's prior statements violated the stipulation.[3]

Initially the judge ordered separate trials. Hurst's lawyer opposed the prosecutor's subsequent motion for a joint trial. He claimed the defenses of the defendants were antagonistic as "both parties have been urged to testify against the other party" and cited Kelker's statements to the police exculpating herself and incriminating Hurst. The prosecutor sought a joint trial to save the expense of having an out-of-town witness brought in twice to testify and agreed not to use extrajudicial statements of either defendant. The motion was granted over the objection of Hurst's lawyer:

"[I]f you brought two adversaries into court into an adversary system, you know, you end up, it could easily end up being two adversaries, don't need the prosecutor, these two people either convict one or the other * * * two people charged with a crime and bring them into court and pit them against each other. You can forget the prosecutory system * * * ."

At the trial, Kelker's statements were in fact used to elicit from her testimony incriminating Hurst and exculpating herself.

We hold that in the circumstances Hurst was denied a fair trial. A defendant is entitled to a trial separate and apart from a codefendant who it appears may testify to exculpate himself and incriminate the defendant seeking a separate trial.

---

[3] *See People v Reagan,* 395 Mich 306; 235 NW2d 581 (1975).

I

An autopsy revealed that the cause of Evelyn's death was the collapse of both lungs. The pathologist testified that in his opinion the tears in her lungs resulted from blows to the upper part of her body with a flat, narrow instrument such as a belt, strap or thin piece of wood. Hurst and Kelker, who had been alone with Evelyn the afternoon of her death, were charged with manslaughter.

Hurst testified that first he heard Evelyn cry and then Kelker screamed that Evelyn had fallen down the stairs. He said he did not hit Evelyn with a belt.

Kelker testified that she did not notice any marks on Evelyn when she dressed her. She admitted spanking Evelyn with a soft sandal for playing with disinfectant and said that after the spanking Evelyn had fallen down the stairs. She testified that Hurst did not strike Evelyn with a belt.

The pathologist conceded he could not rule out the possibility that the injuries were caused by a fall down the stairs, but it was his opinion that they were caused by an instrument like a belt.

After the defendants rested, the prosecutor asked to recall Kelker out of the presence of the jury to make a separate offer of proof for purposes of impeachment. He read Kelker's extrajudicial statements to the effect that Hurst had repeatedly whipped the baby with a belt. The prosecutor then asked the court to instruct Kelker on perjury. Kelker's and Hurst's lawyer moved for a mistrial. The motion was denied. Kelker was permitted, over Hurst's objection, to reopen her proofs.

Kelker then testified that Hurst had hit Evelyn "a number of times" with a belt.

## II

The general rule is that a defendant does not have a right to a separate trial. Joinder of defendants for trial is usually within the discretion of the court.[4] However, "[a] severance should be granted when the defenses of several defendants jointly indicted are antagonistic to each other". 5 Wharton's Criminal Law and Procedure, § 1946; Anno: *Right to severance where two or more persons are jointly accused,* 70 ALR 1171.[5]

The commentary accompanying the American Bar Association Standards Relating to Joinder and Severance states: "it has long been the view that defendants joined for trial should be granted a severance whenever their defenses are antagonistic to each other".[6]

"A separate trial will be ordered where the defenses of the accused are antagonistic * * * ." *State v Klein,* 97 Conn 321; 116 A 596, 597 (1922).

"Where defenses are antagonistic and one defendant accuses the other, thus making it impossible for the defendants asking for a severance to have a fair trial, the severance should be granted." *People v Meisenhelter,* 381 Ill 378; 45 NE2d 678, 684 (1942).[7]

---

[4] MCLA 768.5; MSA 28.1028.

[5] Much of the early case law, preceding *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), dealt with the question whether a joint trial should be permitted where a codefendant has given a confession which the prosecutor intends to use at the trial, with a cautionary instruction by the judge that the jury should not consider the confession as evidence against the defendant.

[6] American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance, Approved Draft, 1968, § 2.3(b), commentary, pp 40–41.

[7] *Similarly, see State v Birbiglia,* 149 La 4; 88 So 533, 542 (1921) *(on rehearing); People v Jones,* 10 Cal App 3d 237; 88 Cal Rptr 871 (1970); *Jenkins v State,* 230 A2d 262 (Del, 1967); *State v Henger,* 220 Wis 410; 264 NW 922 (1936); *Williams v State,* 226 Md 614; 174 A2d 719 (1961), *cert den* 369 US 855; 82 S Ct 943; 8 L Ed 2d 13 (1962).

In *People v Braune,* 363 Ill 551; 2 NE2d 839, 842 (1936), two physicians were charged with manslaughter of a patient who died following an illegal abortion. Their motions for severance on the ground of antagonistic defenses were denied, and at trial each accused the other. In reversing and remanding for new trials the Illinois Supreme Court said:

"The trial was in many respects more of a contest between the defendants than between the people and the defendants. It produced a spectacle where the people frequently stood by and witnessed a combat in which the defendants attempted to destroy each other. Any set of circumstances which is sufficient to deprive a defendant of a fair trial if tried jointly with another is sufficient to require a separate trial."

An Oklahoma Court similarly reversed the second-degree murder convictions of codefendants who offered inconsistent defenses:

"[T]he respective defenses of Grizzle and Murray were mutually antagonistic. Grizzle's testimony and confession were such that only Murray could have done the shooting, while Murray's testimony and confession were such that only Grizzle could have done it.

"Denial of a severance in the instant case resulted in pitting defendant against co-defendant. To try both together was, in effect, to try each on the confession of the other. * * *

"In the instant case, it is our opinion, that both defendants had no alternative except to take the stand and defend himself against the other's confession blaming the killing on each other." *Murray v State,* 528 P2d 739–740 (Okla Crim, 1974).

In *Eder v People,* 179 Colo 122; 498 P2d 945, 946 (1972), a quantity of hashish was seized in an apartment shared by four persons, two of whom

were charged and convicted of possession. "It was the theory of each defendant that the hashish belonged not to him, but to the other defendant." The defenses were found to be antagonistic and separate trials were ordered on remand.

A Florida appellate court held that a pretrial motion to sever should have been granted where "a conflict between the defendants' defenses was inherent in the case". *Thomas v State,* 297 So 2d 850, 852 (Fla App, 1974). During search of an automobile owned by one defendant and driven by another, police found a bag of cocaine on the floor between the owner's legs. At the trial the defendant owner attempted to disavow control of the drug by "putting the blame on defendant [driver]".

The Louisiana Supreme Court reversed the denial of a pretrial motion for severance where one defendant accused the other. The codefendants were jointly charged with possession of marijuana with intent to distribute:

"The only evidence adduced at the hearing held on the motion was the testimony of counsel for Thibodeaux, who testified that the gravamen of his intended defense of Thibodeaux would be to establish that the contraband forming the basis of the prosecution, which was found in an apartment shared by the defendants, was the sole property of Sallettes and that Thibodeaux had no knowledge of its existence. * * *

"Thus, the thrust of Thibodeaux's defense is directly accusatory of Sallettes, requiring him, in effect, to stand trial before two accusers, the state and Thibodeaux. Under these circumstances, justice requires that the joint charge be severed to allow the separate trial of each defendant." *State v Thibodeaux,* 315 So 2d 769, 770–771 (La, 1975).[8]

---

[8] In *State v Bessa,* 115 La 259; 38 So 985, 987 (1905), defendants appealed their convictions of assault with intent to commit murder. The Louisiana Supreme Court said:

"The trial seems to have been a three-cornered fight; the state

## III

While neither Kelker nor Hurst directly accused the other of causing Evelyn's death, the tendency of the testimony of each was to accuse the other of her death.[9] By insisting on a joint trial, the state succeeded in pitting one defendant against the other, each trying to save himself at the detriment of the other.

The pathologist testified that in his opinion the lung collapse was caused by a beating administered with an instrument like a belt. While the primary issue was whether either or both defendants had caused the death of the child, the expert testimony focused subsequent inquiry on who had wielded "the belt".

Kelker testified that she had spanked Evelyn with a soft shoe or sandal but denied that she had used a belt. She ultimately testified that Hurst hit Evelyn with a belt. Hurst denied he used a belt; the tendency of his testimony, therefore, was that if a belt had been used, Kelker, despite her denial, was the one who used it.

Hurst was aware of Kelker's extrajudicial statements incriminating him and correctly anticipated that if the two were tried jointly she would testify to exculpate herself and incriminate him. The judge erred in ordering a joint trial over Hurst's objection.

---

striving to convict both of the accused, and each of the accused striving to convict the other.

\* \* \*

"As the court understands the case, there is no serious, if any, denial that one or the other of the accused committed the crime, and the sole question is as to which one of them did it. Under these circumstances, the defenses are clearly antagonistic, and the motion for a severance should have been sustained."

[9] *See Day v State,* 196 Md 384; 76 A2d 729 (1950); *Murray v State,* 528 P2d 739 (Okla Crim, 1974).

## IV

In instructing the jury the judge said:

"If you find either of the defendants not guilty of the charge of manslaughter then you should proceed to determine whether that defendant not guilty of the crime of manslaughter is guilty of the crime of assault and battery."

We agree with Hurst that this instruction improperly interfered with the jury's deliberations by requiring agreement of all twelve jurors to acquit the accused of the charged offense before considering a lesser offense.

Under the judge's instruction, even if the jurors were 11 to 1 for acquittal and a significant number of jurors desired to discuss the possibility of convicting the defendant of a lesser offense, consideration of a lesser offense could not begin unless the one juror holding out for conviction were dissuaded from that view.

The instruction is unrealistic and improper.[10]

Our disposition of this case does not require that we decide whether the giving of the instruction was reversible error. In the future, however, such instructions should be avoided.

Reversed and remanded for a new trial.

KAVANAGH, C. J., and WILLIAMS, J., concurred with LEVIN, J.

FITZGERALD, LINDEMER, and RYAN, JJ., took no part in the decision of this case.

---

[10] *See People v Ray,* 43 Mich App 45; 204 NW2d 38 (1972); *People v Harmon,* 54 Mich App 393; 221 NW2d 176 (1974); *People v Britt,* 57 Mich App 375; 225 NW2d 771 (1975); *People v Bates,* 55 Mich App 1; 222 NW2d 6 (1974).

COLEMAN, J. *(dissenting).* I would affirm the Court of Appeals decision.

First, the defendant-appellant did not brief the joinder question either in the Court of Appeals or this Court. Also, the cases cited by the majority in support of separate trials are distinguishable on their facts. Here, the defenses were not antagonistic.

### 1.

It is well settled that an issue on appeal is abandoned if the party does not argue that issue.[1] The policy behind this rule has long been resolved.

Important in an adversary system is the opportunity that must be given to the opposing party to refute an argument. There can be no opportunity for refutation if an issue is never briefed or argued.

### 2.

The majority concedes that joinder of defendants for trial is usually within the discretion of the trial court.[2] The majority maintains that the trial in the instant case should have been severed on the ground of antagonistic defenses. While each of the cases cited involve codefendants who offered inconsistent defenses, such is not the instant case.

Both of the defendants maintained that the daughter's injuries were caused by a fall down the steps.

---

[1] *See People v Sims,* 62 Mich App 550, 555; 233 NW2d 645 (1975), *People v St Onge,* 63 Mich App 16, 17; 233 NW2d 874 (1975), *Anchor Bay Concerned Citizens v Anchor Bay Board of Education,* 55 Mich App 428, 431; 223 NW2d 3 (1974), *Mitcham v Detroit,* 355 Mich 182; 94 NW2d 388 (1959). *See also, Boissonneault v Flint City Council,* 392 Mich 685; 221 NW2d 393 (1974).

[2] MCLA 768.5; MSA 28.1028.

It is evident that Hurst and Kelker from the start intended to present the defense of a fall down the stairs. The doctor in attendance at the emergency room where Hurst and Kelker brought the deceased child, testified:

"Yes sir, as I stated before, the lady, Mrs. Kelker, was very hysterical and the gentleman sitting next to her came in and stated that the baby had fallen down the stairs, he had thought, this was the baby's mother, at that time while I was trying to examine the baby and get some sort of history of what had transpired I asked the gentleman, since he appeared to be either a friend or relation, I asked him if he could help calm the woman down and get some information from her. At this point he began shaking her, in what I thought was an attempt to calm her down, like I had requested. At this point he stated to her, the exact words were, *just remember to say that the baby fell down the stairs, don't say anything more, or something equivalent to that."*

Hurst testified that the child fell down the stairs and that he had not spanked her on the day of the death. Kelker initially told an identical story:

"I went down to dress the kids and Evelyn and Letitia were both with some—we had some—we had got some spray, this was disinfectant and they were both—had it playing, Evelyn and both of them were putting in their mouth and I told them to take it out and they kept on so I picked up a sandal and I spanked both of them, both of the kids and then I was dressing Evelyn, I mean was dressing Letitia, Evelyn started up toward the stairs and she got, I don't know how far she got up, but I know I seen her when she fell back down, I called Norwood, he came back downstairs, he took a towel and he was putting some cold water on her, then he went upstairs and I was giving her artificial respiration, he went upstairs and got his aunt and Henny came back downstairs and she was trying to give her artificial

respiration and she wasn't coming to and so Norwood
tried also and Henny told us to take the baby to the
hospital because she looked like she was dying."

Thus, the defenses were not antagonistic. The jury
could have believed the codefendant's story and
found neither of them guilty.

However, the prosecutor found that the above
testimony was false and required impeachment by
prior inconsistent statement:

"*Q.* Now, Mrs. Hurst, do you recall that on July 9th
before the Honorable Patrick J. Conlin in the District
Court in the City of Ypsilanti about 10 in the morning,
making a statement to him under oath?

"*A.* Yes, I do.

"*Q.* And under oath you were asked to tell exactly
what happened and you said, 'okay, well, Evelyn was
putting disinfectant in her mouth and I was spanking
her and he told me that I wasn't disciplining her
enough and if I didn't discipline her that he would
spank her and he began to hit her with his belt.'

"*The Court:* He began to hit her with what?

"*Mrs. Kelker:* His belt.

"*The Court:* Then what happened then, Mrs. Kelker?

"*Mrs. Kelker:* Then she started getting kind of dizzy,
dazey and he told me that Evelyn, he told me that I
should discipline the kids more * * * .

"*Q.* Do you recall stating under oath, he begin to hit
her with his belt?

"*A.* No, I didn't say hit her with his belt.

"*Q.* You didn't say that?

"*A.* No, I didn't.

"*Q.* The Court asking you a question, and what part
of the belt was he using on her, was this the leather
part or where was he hitting her, and you responded, 'I
didn't watch exactly where, but it was toward the back
and on the chest'; do you recall saying that?

"*A.* Yes.

"*Q.* The Court asking you, 'but you saw him hit the

child a number of times', and your response, 'yes'. Do you recall saying that?

"*A.* Yes.

"*Q.* The Court, 'and you didn't tell him to stop', your response, 'no, I didn't tell him to stop, I just said when I told him before not to hit the kids the way he was doing and I didn't want to hit the kids the way he was doing, and he would discipline me about not hitting the kids, he said that I was just tapping them or that I wasn't disciplining them enough or that if I mentioned it he was just mean for disciplining the kids.' Do you remember saying that?

"*A.* That, no.

"*Q.* Do you recall testifying on the preliminary examination against Norwood Hurst on August 26, 1971 before the Honorable Henry Arkison about 2:15 in the afternoon in Ypsilanti, do you recall that?

"*A.* Yes, I do.

"*Q.* Do you recall the question, 'did he in any way or form discipline the child during this period of time', your response, 'yes, but it was before I had'. Do you recall saying that?

"*A.* Yes.

"*Q.* Question, 'how did he discipline the child,' your response 'he hit her with a belt'. Do you recall saying that?

"*A.* Yes."

The above testimony was taken out of the presence of the jury. After the court ordered Kelker's attorney to discuss the crime of perjury with her, the jury returned and Kelker's attorney again questioned her concerning the incident, this time eliciting the truth.

The majority concedes that "neither Kelker nor Hurst directly accused the other of causing Evelyn's death". Since the joinder question is within the discretion of the trial court, I find no abuse of that discretion.

The majority opinion has the effect of imposing strict limitations on the use of impeaching testimony in a joinder of trials. As noted above, even the parties no longer view separate trials as the issue since that issue was not argued before this Court or the Court of Appeals. I agree with the Court of Appeals that perjury was the real problem in this case.

I would affirm.