PEOPLE v HOFFMAN

Docket No. 120228. Submitted September 7, 1993, at Detroit. Decided
May 2, 1994, at 9:35 A.M.

Robert H. Hoffman was convicted in the Ingham Circuit Court,
James R. Giddings, J., of second-degree murder, after having
been tried jointly with Luciano Lino before separate juries. The
defendant and Lino each had been indicted on an open count of
murder following an investigation by a one-man grand jury. At
trial, the court permitted the prosecution to introduce into
evidence portions of the defendant's testimony before the grand
jury despite objections by the defense that it should not be
admitted because the defendant had not been given the warn-
ings required by *Miranda v Arizona,* 384 US 436; 86 S Ct 1602;
16 L Ed 2d 694 (1966), the grand jury having found that the
defendant had been apprised sufficiently of his rights before
being questioned. The defendant appealed.

The Court of Appeals *held:*

1. The United States Constitution does not require the ad-
ministration of the *Miranda* warnings, including the right of
appointed counsel, before questioning a target of a grand jury
inquiry. The *Miranda* warnings were intended to address the
particular potential for abuse inherent in police custodial ques-
tioning, which is not inherent in questioning undertaken before
a grand jury. In any event, the defendant was informed ade-
quately of his *Miranda* rights before he was questioned in the
presence of the grand jury.

2. The defendant's claim that he was denied a fair trial
because the prosecution introduced only the inculpatory por-
tions of his grand jury testimony has not been preserved for
appellate review, no objection having been made before the
trial court. Further, the defendant never attempted to intro-
duce any exculpatory testimony, and the matters omitted from

REFERENCES

Am Jur 2d, Criminal Law §§ 791-794, 974.

What constitutes "custodial interrogation" within rule of Miranda v
Arizona requiring that suspect be informed of his federal consti-
tutional rights before custodial interrogation. 31 ALR3d 565.

the redacted testimony would have been more harmful than helpful to the defense.

3. The court properly determined that a police officer's type-written report prepared four years after the interview of a witness was not admissible as a past recollection recorded where the witness had no recollection of the context of her statement to the police even after reviewing the report and the statement was neither signed nor adopted by the witness at a time when the matter was fresh in her mind.

4. The claim of misconduct by the prosecutor is not supported by citation of legal authority, and the Court of Appeals will not search for authority to sustain a party's argument.

5. The court did not abuse its discretion in admitting into evidence photographs showing the pattern of wounds on the victim's back and chest.

6. The defendant's claim that he was denied a fair trial because he was tried jointly with the codefendant was not preserved for appellate review, there having been neither a motion for a separate trial nor an objection to the joint trial.

7. The defendant's claim that rebuttal testimony elicited by the prosecution denied him a fair trial was not preserved for appellate review, and no manifest injustice resulting from the failure to review the issue has been shown.

8. The claim that the court abused its discretion in restricting cross-examination of certain witnesses was not preserved for review.

9. The question whether the prosecution's closing arguments contained an improper appeal to sympathy or an improper assertion of the investigating officer's belief in the defendant's guilt was not preserved by an objection, and failure to review this issue will not result in a miscarriage of justice.

10. The defendant was not denied a fair trial because the court, pursuant to a jury request, provided written instructions concerning the elements of the crime without also giving written instructions that guilt must be established beyond a reasonable doubt.

11. The claim that the indictment must be quashed because the grand jury heard testimony concerning polygraph results was not preserved for appellate review, no motion to quash having been made. In any event, a grand juror is not constrained by the rules of evidence and may consider all sources of evidence.

12. The defendant's sentence of thirty to fifty years is within the guidelines and, therefore, is presumed to be proportional, a

presumption that the defendant has not overcome. The defendant has failed to establish that the court did not score certain offense variables correctly.

Affirmed.

CONSTITUTIONAL LAW — *MIRANDA* WARNINGS — GRAND JURIES.

The United States Constitution does not require the administration of the warnings required by *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), including the right of appointed counsel, before questioning a target of a grand jury inquiry.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Donald E. Martin,* Prosecuting Attorney, and *Guy L. Sweet,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Chari Grove*), for the defendant on appeal.

Before: HOOD, P.J., and CORRIGAN and S. J. LATREILLE,* JJ.

CORRIGAN, J. Defendant appeals as of right his conviction of second-degree murder, MCL 750.317; MSA 28.549, and his sentence to a term of imprisonment of thirty to fifty years. We affirm.

Following an initial police investigation in 1984 and an intensive police and grand jury investigation four years later, on November 3, 1988, the Ingham County grand juror indicted defendant and codefendant Luciano Lino[1] on one count of open murder in the February 25, 1984, stabbing death of Douglas Perry in Lansing. After a preliminary examination, both defendants were bound over for trial as charged. Defendant and codefendant Lino were then tried before separate juries

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Although codefendant Lino's claim of appeal was filed in August 1989, that appeal has not yet been heard (*People v Lino,* Docket Nos. 120125, 170360).

and convicted of second-degree murder in 1989, following a three-week trial.

## I. ADMISSION OF GRAND JURY TESTIMONY

### A. *MIRANDA* WARNINGS

Although defendant has raised eleven issues on appeal, only one is jurisprudentially significant. Defendant, a state prison inmate incarcerated on unrelated charges, contends that a target[2] who is subpoenaed to testify before a grand juror must be advised of *Miranda* warnings (*Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 [1966]) before he may be questioned. The subpoena to defendant recited various rights, including a right to appointed counsel. Before commencing questioning, the prosecutor gave defendant explicit *Miranda*-style warnings, but never orally advised defendant that counsel would be appointed if defendant was indigent. Defendant orally acknowledged receipt of the written advice of rights and stated that he understood those rights.

It is undisputed that the prosecutor advised defendant before he testified:

> *Q.* Mr. Hoffman, you have been served with a subpoena to be here today?
> *A.* Yes sir, I have it right here.
> *Q.* Do you have it with you? Here, do you want me to help you with that?
> *The Grand Juror:* Just put it in front of him.
> *Q.* Did you have an opportunity to read the bottom of that subpoena about your rights?
> *A.* Yes, sir.

---

[2] For purposes of this opinion, we adopt the federal definition of a grand jury target. A target is "a person as to whom the prosecutor or grand jury has substantial evidence linking him/her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." *United States Attorneys' Manual,* (1990 rev), 9-11.150.

*Q.* Do you understand your rights?

*A.* Yes, sir.

*Q.* Would you like (sic) have an attorney with you here when you testify today?

*A.* Is that right?

*Q.* Yes, sir.

*A.* No, sir.

*Q.* You sure about that?

*A.* Yes, sir.

*Q.* If there comes a time when you feel you need an attorney, will you tell me that?

*A.* Yes, sir.

* * *

*Q.* I am going to ask you a series of questions about the Doug Perry murder. You are the focus.

*A.* I understand that.

*Q.* Of our investigation: you have the right to an attorney here with you?

*A.* Yes, sir, I know that.

*Q.* I would encourage you to have one, if you want one.

*A.* I have no involvement in this case. I don't see where I need to have—and where I need—where I have need for an attorney.

*Q.* Well, anything that you say can and will be used against you in a court of law.

*A.* I realize that.

*Q.* You have the right under the Fifth Amendment not to answer the questions that I will put to you.[3]

*A.* I know all of this.

Defendant then admitted certain facts, which the prosecutor sought to introduce against him in redacted form at trial. Defense counsel objected to the prosecutor's failure to give defendant the *Mi-*

---

[3] The advice was legally incorrect, because the witness' right did not permit him to decline to answer all questions, but only those questions that tended to incriminate him. *United States v Washington,* 431 US 181; 97 S Ct 1814; 52 L Ed 2d 238 (1977).

*randa* warnings, specifically oral advice of the right to appointed counsel. Without deciding precisely which rights were implicated, the trial court found that defendant had been sufficiently apprised of his rights to allow admission of the statement.

Because defendant has advanced no argument in reliance on the Michigan constitution or statutes, we confine our analysis to what the United States Constitution dictates. Overlooking nearly three decades of case law interpreting *Miranda,* defendant relies only on *Miranda v Arizona, supra,* and *Escobedo v Illinois,* 378 US 478; 84 S Ct 1758; 12 L Ed 2d 977 (1964), for the duty to administer *Miranda* warnings in the grand jury. Defendant has not posed the more difficult question whether some form of constitutionally sufficient *Miranda*-type warnings is required. We conclude that the federal constitution does not require the administration of *Miranda* warnings, including the right of appointed counsel, before questioning of a target of a grand jury inquiry. Assuming in the alternative that some type of *Miranda* warnings is necessary, we conclude that the written and oral warnings, together with defendant's oral acknowledgment that he understood his rights, sufficed to permit admission of defendant's subsequent statements.

*Miranda* requires that before custodial interrogation, an individual must be apprised of (1) the right to remain silent, and (2) the accompanying explanation that anything said can and will be used against him in court, (3) the right to consult with an attorney and to have one present during interrogation, and (4) the right to appointed counsel before questioning, if he cannot afford counsel.

We conclude that the federal constitution does not require that *Miranda* warnings be administered before the questioning of a target of a grand

jury inquiry. Grand jury witnesses are not entitled under the federal constitution to "target or potential defendant warnings." *United States v Washington,* 431 US 181, 186, 190-191; 97 S Ct 1814; 52 L Ed 2d 238 (1977). Earlier, *United States v Mandujano,* 425 US 564; 96 S Ct 1768; 48 L Ed 2d 212 (1976) (plurality opinion) recognized that judicial inquiry in a grand jury setting does not bear the inherently coercive characteristics of incommunicado police interrogation in the station house found intolerable in *Miranda. Mandujano* rejected the argument that a target is entitled to *Miranda* warnings, which "were aimed at the evils seen by the Court as endemic to police interrogation of a person in custody."[4] 425 US 579. As the *Mandujano* plurality noted:

> [M]any official investigations, such as grand jury questioning, take place in a setting wholly different from custodial police interrogation. Indeed, the Court's opinion in *Miranda* reveals a focus on what was seen as police "coercion" derived from "factual studies [relating to] police violence and the 'third degree' . . . physical brutality—beating, hanging, whipping—and to sustained and pro-

---

[4] LaFave & Israel, Criminal Procedure: Constitutional Limitations in a Nutshell (5th ed), p 229 summarizes *Mandujano* as follows:

> While the full Court did not reach the issue, a four-justice plurality opinion in *Mandujano* did consider and reject the need for full *Miranda* warnings. It stressed that: (1) grand jury questioning "takes place in a setting wholly different from custodial police interrogation"; (2) a grand jury witness has no absolute right to remain silent comparable to that of the person being interrogated by police, but rather has an "absolute duty to answer all questions, subject only to a valid Fifth Amendment claim"; and (3) there was no Sixth Amendment basis for providing the witness with appointed counsel since "no criminal proceedings had [yet] been instituted" and the "Sixth Amendment right to counsel [therefore] had not come into play." Because the witness in *Mandujano* was told that he had a right not to answer incriminatory questions, the plurality noted it therefore was "unnecessary to consider whether any warning is required."

tracted questioning incommunicado in order to extort confessions. . . ." To extend these concepts to questioning before a grand jury inquiring into criminal activity under the guidance of a judge is an extravagant expansion never remotely contemplated by this Court in *Miranda*; the dynamics of constitutional interpretation do not compel constant extension of every doctrine announced by the Court.

The marked contrasts between a grand jury investigation and custodial interrogation have been commented on by the Court from time to time. MR. JUSTICE MARSHALL observed that the broad coercive powers of a grand jury are justified, because "in contrast to the police—it is not likely that [the grand jury] will abuse those powers." [*Id.* at 579-580; citations omitted.]

Later cases also suggest that *Miranda* does not govern proceedings in the grand jury. *Miranda* is confined to cases involving custodial interrogation in a police-dominated atmosphere. *Miranda* must be strictly enforced, but only in "those types of situations in which the concerns that powered the decision are implicated." *Berkemer v McCarty,* 468 US 420, 437; 104 S Ct 3138; 82 L Ed 2d 317 (1984). These situations share two irreducible elements: custody and official interrogation. *Illinois v Perkins,* 496 US 292; 110 S Ct 2394; 110 L Ed 2d 243 (1990); *United States v Kilgroe,* 959 F2d 802, 804 (CA 9, 1992). In concluding that a subpoenaed witness who is also a putative defendant need not receive *Miranda* warnings at a criminal trial, the *Kilgroe* court explained:

Although the courtroom is the paradigmatic setting for invoking the right against compelled self-incrimination, it is not the type of setting that would justify invoking *Miranda*'s prophylactic rule. The *Miranda* Court itself recognized that "the compulsion to speak in the isolated setting of

the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery." *Miranda,* 384 US at 461; 86 S Ct at 1621. Nor does the "obligation to appear and testify truthfully" created by subpoena "constitute compulsion to give incriminating testimony" of the sort that implicates *Miranda's* policies. *United States v Jenkins,* 785 F2d 1387, 1393 (CA 9, 1986). Unlike custodial interrogation—which usually takes place without warning and, therefore, without the chance for reflection or legal advice—the subpoena gives the witness the opportunity in advance to obtain whatever counsel he deems appropriate and carefully contemplate his testimony. He remains free, of course, to refuse to answer questions that would incriminate him. [959 F2d 804-805.]

Defendant was indisputably in custody, although on unrelated criminal convictions. He was also compelled to appear for official interrogation. He was not, however, subjected to police interrogation. This distinction is critical. As Professor Yale Kamisar has written trenchantly:

It is the impact on the suspect of the *interplay* between police interrogation and police custody—each condition *reinforcing* the pressures and anxieties produced by the other—that, as the *Miranda* Court correctly discerned, makes "custodial police interrogation" so coercive. It is the *combination* of "custody" and "interrogation" that establishes the "interrogation environment" that is "at odds" with the privilege against self-incrimination and that calls for "adequate protective devices." [Kamisar, Miranda: *The case, the man, and the players,* 82 Mich L 1074, 1077 (1984), selectively quoting *Miranda.*]

In *Minnesota v Murphy,* 465 US 420; 104 S Ct 1136; 79 L Ed 2d 409 (1984), the Court explained

that the general obligation to appear and answer questions truthfully does not convert otherwise voluntary statements into compelled statements. The Court compared the probationer in *Murphy* to a grand jury witness who is subpoenaed, sworn, and obligated to answer on pain of contempt. Only if the witness is required to answer over a valid claim of privilege is the witness compelled for Fifth Amendment purposes. *Id.* at 427. Further, *Murphy* dispenses with the need for warnings, despite the probationer's duty to appear and speak truthfully, noting that such warnings had never been required for grand jury witnesses and that the totality of the circumstances did not overbear the probationer's will.

*Miranda* is not a constitutional rule, but a prophylactic rule designed to insure protection of an accused's right against compelled self-incrimination. *Michigan v Tucker,* 417 US 433; 94 S Ct 2357; 41 L Ed 2d 182 (1974); *Withrow v Williams,* 507 US —; 113 S Ct 1745, 1752-53; 123 L Ed 2d 407 (1993) (collecting cases describing *Miranda* rights as prophylactic). *Miranda* created a "presumption of compulsion" for custodial interrogation occurring in the stationhouse. *Oregon v Elstad,* 470 US 298, 307; 105 S Ct 1285; 84 L Ed 2d 222 (1985). *Miranda* comes into play only where government coercion risks undermining the individual's will to resist. *Illinois v Perkins,* 496 US 296, quoted in *United States v Kilgroe, supra* at 804.

We are also persuaded that the actual substance of the *Miranda* warnings is not required by the federal constitution in this context. The warnings would convey inaccurate advice to a grand jury target. First, advice to a grand jury target that the target possesses an absolute "right to remain silent" is wrong. *Mandujano, supra.* No such right exists for a grand jury witness or target. A grand

jury witness must answer all questions, subject only to a valid Fifth Amendment claim if a truthful answer would incriminate him. Even if a grand jury witness asserts the privilege, the prosecutor need not cease all questioning, but need only cease questioning regarding the particular subject involving the privilege. A target or witness who testifies, unlike an individual subject to custodial police interrogation, cannot prevent further questioning. The Fifth Amendment privilege in the grand jury translates to an "*option of refusal,* not a prohibition of inquiry." Grano, Confessions, Truth and the Law, p 134, n 120, quoting 8 J Wigmore, *A Treatise on the Anglo American System of Evidence and Trial at Common Law,* § 2268, at 388 (3d Ed, 1940); *United States v Burr,* 25 F Cas 38 (CC D Va, 1807) (opinion of Marshall, C.J.); *Garner v United States,* 424 US 648; 96 S Ct 1178; 47 L Ed 2d 370 (1976).

When testifying before a grand jury, a target must invoke affirmatively the privilege question by question. *People v Blachura,* 81 Mich App 399, 409, n 5; 265 NW2d 348 (1978) ("Absent the assertion of some privilege a person has an absolute duty to testify before a grand jury, *Mandujano, supra* at 581, *United States v Calandra,* 414 US 338, 343; 94 S Ct 613; 38 L Ed 2d 561 (1974), and if defendant Blachura was not asserting a privilege he had no excuse for not answering a question.").

In *United States v Gillespie,* 974 F2d 796, 803 (CA 7, 1992), the court succinctly described the governing principles:

It is well established that witnesses appearing before the grand jury enjoy the protection of the fifth amendment privilege against self-incrimination, *Counselman v Hitchcock,* 142 US 547; 12 S Ct 195; 35 L Ed 1110 (1892), but it likewise is "axio-

matic that the Amendment does not automatically preclude self-incrimination, whether spontaneous or in response to questions put by government officials." *Washington,* 431 US at 186; 97 S Ct at 1818. The constitutional guarantee "is only that the witness not be *compelled* to give self-incriminating testimony." *Id.* at 188, 97 S Ct at 1819 (emphasis in original). "All *Miranda*'s safeguards, which are designed to avoid the coercive atmosphere, rest on the overbearing compulsion which the Court thought was caused by isolation of a suspect in police custody." *Id.,* 431 US at 187, n 5; 97 S Ct 1819, n 5.

Contrary to the *Miranda*-created right to counsel for custodial police interrogation, a grand jury target or witness has no right under the federal constitution to have counsel present during testimony before a grand jury. The Court noted in *Mandujano* that counsel could not be present inside the grand jury room and that the Sixth Amendment right to counsel does not attach in the grand jury. A grand jury witness cannot insist, as a matter of federal constitutional right, on representation of counsel. See also *United States v Williams,* 504 US —; 112 S Ct 1735, 1746; 118 L Ed 2d 352 (1992); *In re Groban,* 352 US 330; 77 S Ct 510; 1 L Ed 2d 376 (1957);[5] *United States v Gouveia,* 467 US 180; 104 S Ct 2292; 81 L Ed 2d 146 (1984) (inmate in administrative detention pending murder investigation has no right to appointment of counsel; Sixth Amendment right attaches only at or after the initiation of adversary judicial proceedings); *Maine v Moulton,* 474 US 159; 106 S Ct 477; 88 L Ed 2d 481 (1985); *Moran v*

[5] We also note that MCL 767.3; MSA 28.943 accorded defendant a statutory right to the presence of his counsel in the grand jury room, if he chose. *People v Blachura,* 59 Mich App 664; 229 NW2d 877 (1975). Defendant has not advanced any statutory claim predicated on the right to counsel in a one-man grand jury.

*Burbine,* 475 US 412, 430; 106 S Ct 1135; 89 L Ed
2d 410 (1986) (which rejected *Escobedo* and *Miranda* as bases for right to counsel because the
Sixth Amendment "[b]y its very terms . . . becomes applicable only when the government's role
shifts from investigation to accusation."). The target has no Sixth Amendment right to the presence
of counsel during his grand jury appearance, nor
does he have the derivative Fifth Amendment
right to appointed counsel recognized in *Miranda.*

The United States Supreme Court has never
decided squarely whether the Fifth Amendment
warnings are constitutionally required for grand
jury targets. *United States v Gillespie, supra;
United States v Pacheco-Ortiz,* 889 F2d 301 (CA 1,
1989). We need not decide this issue, because it is
not present on this record. Defendant was apprised
of the right against compelled self-incrimination in
much broader terms than the Fifth Amendment
requires.[6] By our result, we decline to disturb
Michigan precedent requiring that a target must
be warned of the right against compelled self-incrimination before questioning may commence in
the grand jury room, *People v DiPonio,* 48 Mich
App 128, 131; 210 NW2d 105 (1973), a requirement
derived from *People v Smith,* 257 Mich 319; 241
NW 186 (1932).

In the alternative, if *Miranda* warnings are
required, the warnings furnished here fully complied with *Miranda.* The prosecutor satisfied his
burden of establishing waiver of the defendant's
right against compelled self-incrimination and the
right to appointed counsel before questioning.

---

[6] The administration of warnings eliminates any possible compulsion to self-incrimination that might otherwise exist in the grand jury
setting. Cf. *United States Attorneys' Manual* (1990 rev), 9-11.150. It
goes without saying that administration of some form of warnings to
targets before they are questioned is sound policy. However, we refuse
to confuse our notions of wise policy with constitutional imperative.

*Duckworth v Eagan,* 492 US 195; 109 S Ct 2875; 106 L Ed 2d 166 (1989); *California v Prysock,* 453 US 355; 101 S Ct 2806; 69 L Ed 2d 696 (1981). A verbatim recital of the words of the *Miranda* opinion is not required. *Prysock, supra.* Instead, an interrogator must communicate the substance of the *Miranda* warnings. The inquiry is merely whether the warnings given in their totality "reasonably 'conve[y] to [a suspect] his rights as required by *Miranda.*' " *Duckworth v Eagan, supra* at 203. The oral and written warnings furnished to defendant touched all the required bases. On this record, we have no doubt that defendant fully understood his rights and knowingly waived them.

In view of case law developments over the last three decades, we hold that the United States Constitution does not require the full panoply of *Miranda* warnings in these circumstances.

### B. DOCTRINE OF COMPLETENESS

Defendant also contends that he was denied a fair trial because the prosecutor introduced only the inculpatory portions of his grand jury testimony, contrary to "the doctrine of completeness," 7 Wigmore, Evidence (Chadbourn rev), § 2115, p 662, and MRE 106, which provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

This issue has not been preserved. An issue not raised below is not preserved for appellate review. *People v Stacy,* 193 Mich App 19, 28; 484 NW2d 675 (1992). Defendant never attempted to elicit

any exculpatory grand jury testimony, despite the prosecutor's offer not to object if defendant brought it out. Further, the "doctrine of completeness" is inapposite where the omitted portions of defendant's grand jury testimony would have been more harmful than helpful to the defense. In addition to denying complicity, defendant testified about his sexual relationship with the codefendant, his substance abuse history, and the presence of his hair on a bloody green blanket (which other evidence showed had covered the victim's body). This argument lacks any merit.

## II. PAST RECOLLECTION RECORDED

Defendant next claims that the trial court abused its discretion by denying the admission of a police report of an interview with Mary Bates, defendant's sometime girl friend, about the events of February 25, 1984. Detective Aveiro, the homicide investigator in 1984, interviewed Ms. Bates shortly after the crime. Bates told Detective Aveiro that she and Kim McIntyre had borrowed Theda Sinclair's car at about the same time that defendant and codefendant allegedly borrowed Sinclair's car.

Aveiro's handwritten notes of the Bates interview were lost or destroyed before the trial. However, sometime in 1988, in conjunction with the task force's project of reviewing unsolved homicides, Aveiro prepared a typewritten report from his 1984 interview notes. Bates was questioned at trial, but had no recollection of her 1984 statement, even after she reviewed Aveiro's typewritten report.

Defendant moved for introduction of Aveiro's report of the Bates' interview as a past recollection recorded, pursuant to MRE 803(5). The trial court

denied admission of the report because the foundational requirements for a past recollection recorded had not been met. *Jaxon v Detroit,* 379 Mich 405, 413; 151 NW2d 813 (1967). In *People v Daniels,* 192 Mich App 658, 667-668; 482 NW2d 176 (1992), this Court held:

> The following foundational requirements must be met before a memorandum or writing may be admitted into evidence under the recorded recollection exception to the hearsay rule:
> "Documents admitted pursuant to this rule must meet three requisites: (1) The document must pertain to matters about which the declarant once had knowledge; (2) The declarant must now have an insufficient recollection as to such matters; (3) The document must be shown to have been made by the declarant or, *if made by one other than the declarant,* to have been examined by the declarant and shown to accurately reflect the declarant's knowledge *when the matter is fresh in his memory. [People v J D Williams,* 117 Mich App 505, 508-509; 324 NW2d 70 (1982), rev'd and remanded on other grounds 412 Mich 711 (1982)]" [Emphasis added.]

Although the first two requirements of *Daniels* were satisfied, Bates had not examined Aveiro's report when the matter was fresh in her mind. Moreover, Aveiro's typewritten report was not contemporaneous with the Bates' interview, but prepared four years later. The statements attributed to Bates by Aveiro were neither signed nor adopted by Bates at a time when the matter was fresh in her memory. The trial court did not abuse its discretion in denying admission of the police report. See also *Solomon v Shuell,* 435 Mich 104; 457 NW2d 669 (1990).

The loss or destruction of Detective Aveiro's original notes did not deny defendant a fair trial.

Defendant seems to contend that if the original interview notes had been available, the evidence would have been admitted as a past recollection recorded. We disagree. The other foundational requirements of the hearsay exception were not met; in any event, this specific objection was not preserved properly for our review.

### III. PROSECUTORIAL MISCONDUCT

Defendant's next group of arguments all relate to alleged prosecutorial misconduct: that the court erred (1) in refusing to allow defense counsel to impeach a prosecution witness with two previous escape convictions, (2) in allowing the prosecutor to create a false and misleading impression regarding the dismissal of an habitual offender charge against a prosecution witness, (3) in allowing the prosecutor to introduce hearsay testimony, and (4) in allowing the prosecutor to bolster improperly the credibility of prosecution witnesses. These four claims are presented for the first time on appeal and are bereft of citation to supporting legal authority. We will not search for authority to sustain a party's argument. *People v Fowler,* 193 Mich App 358, 361; 483 NW2d 626 (1992).

Defendant further argues that the prosecutor misled the jury about the results of dismissal of an habitual offender information involving Jody Sinclair, a prison inmate who testified against defendant. In exchange for Sinclair's testimony, various state charges, including an habitual offender charge, were dismissed. Sinclair then pleaded guilty and served his sentence on bank robbery charges in federal custody. Sinclair accurately testified that the maximum possible penalty for armed robbery is life imprisonment. MCL 750.529; MSA 28.797. The habitual offender statute thus

could not increase the maximum possible term of imprisonment. The prosecutor did not create a false and misleading impression with this testimony.

Defendant next asserts that the prosecutor improperly argued that the witnesses gained nothing by their testimony. Again, defendant failed to object. The error is not preserved for appeal unless it would result in a miscarriage of justice. The prosecutor merely commented on the evidence presented at trial, including the evidence that Sinclair was facing only federal charges and not state charges. We see no miscarriage of justice.

### IV. ADMISSION OF PHOTOGRAPHS

Defendant next contends that he was denied a fair trial by the admission of gruesome photographs. The court did not abuse its discretion in admitting a photograph that graphically disclosed the pattern of knife wounds inflicted on the victim. Probative evidence of guilt is "always prejudicial from a defendant's point of view. The relevant question is whether the evidence was unfairly prejudicial." *People v Oswald (After Remand),* 188 Mich App 1, 8; 469 NW2d 306 (1991). Photographs are admissible if substantially necessary or instructive to show material facts or conditions. *People v Falkner,* 389 Mich 682, 685; 209 NW2d 193 (1973), citing *People v Eddington,* 387 Mich 551, 562-563; 198 NW2d 297 (1973). If photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they vividly portray the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors. 387 Mich 562-563, citing 29 Am Jur 2d, Evidence, § 787, pp 860-861; *People v McCord,* 167 Mich App 365, 369; 421 NW2d 692 (1988).

The trial court excluded certain of the photographs the prosecutor offered, but admitted other photographs depicting the pattern of stab wounds on the victim's chest and back. The particular photograph at issue is not particularly gruesome or shocking, but instead appear rather clinical. This evidence was properly admitted, especially where the prosecutor sought (unsuccessfully) to establish the elements of first-degree murder. The court did not abuse its discretion in admitting this evidence.

### V. JOINT TRIAL

We reject defendant's contention that being tried jointly with his codefendant denied him a fair trial. This issue was not preserved for appellate review. Defendant neither sought a separate trial nor objected to a joint trial. Failure to move for a separate trial precludes appellate review. *People v Rockwell*, 188 Mich App 405; 470 NW2d 673 (1991).

This Court has specifically approved the use of dual juries to avoid problems in joint trials of defendants with antagonistic defenses. *People v Brooks*, 92 Mich App 393; 285 NW2d 307 (1979). Defendant did not object to the use of two juries, nor has he explained why the evidence about which he currently complains would not have been admitted in a separate trial.

The Code of Criminal Procedure makes it discretionary whether two or more defendants "jointly indicted for any criminal offense" should be tried separately or together. MCL 768.5; MSA 28.1028. *People v Hurst*, 396 Mich 1; 238 NW2d 6 (1976), held that "[a] defendant is entitled to a trial separate and apart from a codefendant who it appears may testify to exculpate himself and in-

criminate the defendant seeking a separate trial."
*Id.* at 4. "The general rule is that a defendant does
not have a right to a separate trial." *Id.* at 6. A
strong policy favors joint trials in the interest of
judicial economy; a defendant does not have an
absolute right to a separate trial. *People v Ether-
idge,* 196 Mich App 43, 52; 492 NW2d 490 (1992).

### VI. REBUTTAL TESTIMONY

Defendant also complains that he was denied a
fair trial by the introduction of improper rebuttal
testimony. Again, defendant did not preserve this
claim for appeal by an objection below, nor did he
raise it in his statement of issues presented. *Peo-
ple v Yarbrough,* 183 Mich App 163; 454 NW2d
419 (1990). Relief will be granted only where the
failure to review the question will result in mani-
fest injustice. *People v Kelly,* 423 Mich 261; 378
NW2d 365 (1985). Two defense witnesses testified
that a detective had made promises in exchange
for the testimony of witnesses McDonald and
Johnson. On rebuttal, a Department of Correc-
tions' employee who was present during those
interviews testified that no promises had been
made. This testimony was obviously justified by
the evidence it was offered to rebut. *People v
Bettistea,* 173 Mich App 106, 126; 434 NW2d 138
(1988). We find no manifest injustice.

### VII. RESTRICTION OF CROSS-EXAMINATION

Defendant contends that the trial court abused
its discretion in restricting cross-examination con-
cerning other suspects in the homicide investiga-
tion. However, the record reflects that the court
restricted defendant's efforts to elicit inadmissible
hearsay statements. The hearsay argument was

not renewed on appeal; the current argument was not preserved below. We decline to review it.

## VIII. CLOSING ARGUMENT

Defendant contends that the prosecutor improperly appealed to sympathy and improperly argued concerning the investigating officer's belief in the defendant's guilt. Because defendant failed to object below, appellate review is precluded unless our failure to consider the issue would result in a miscarriage of justice. *People v Malone*, 193 Mich App 366, 371; 483 NW2d 470 (1992), lv gtd on other grounds 442 Mich 867 (1993). We find none.

The prosecutor did not engage in misconduct by terming the victim's death as "horrible" and by describing the hole in the victim's body where the knife "went in and out and in again." The forensic pathologist's testimony showed the knife was reinserted into the same wound. The manner of death *was* horrible. Nor was justice offended by the prosecutor's statement that the victim was somebody's child who was entitled to the equal protection of the law and that in a free society one murder is no less important than another. In context the prosecutor argued that a "street person" was entitled to the same consideration as other victims.

The prosecutor's arguments were based on the evidence. He did not ask the jury to suspend their judgment and decide the case on the basis of sympathy. Nor did he place the prestige of his office behind the statement that "we believe through investigation we have identified the perpetrator of this particular murder." This innocuous observation preceded remarks about the evidence presented during a lengthy murder trial. The prosecutor essentially asked the jury to decide the case

on the basis of the evidence and to render a fair and impartial verdict. We find no basis for reversal because of prosecutorial misconduct in closing argument.

### IX. JURY INSTRUCTIONS

Defendant argues that he was denied a fair trial because the court, pursuant to the jury's request during deliberation, provided written instruction on the elements of the offenses but did not include a separate instruction concerning reasonable doubt. Defendant now contends that the trial court's instructions overemphasized the prosecution's theory of the case. Because defendant failed to object, our review is limited by the manifest-injustice standard. *People v Van Dorsten,* 441 Mich 540; 494 NW2d 737 (1993). We find no manifest injustice.

During their deliberations, the jury requested written definitions of the elements of the crime. Defense counsel agreed that the court could provide written instructions, but asked for additional language that if the jurors did not find guilt beyond a reasonable doubt on each element, they should find defendant not guilty. The court replied that the instructions already required that each element be proven beyond a reasonable doubt. The court did not want to deviate from the standard instructions. After hearing the court's rationale, defendant neither renewed his request nor objected to the instructions as given. Under MCR 2.516(B)(5)(c), the court may give a partial set of written instructions if the parties agree. Defendant never withdrew his agreement relating to written instructions, contrary to the argument in his appeal brief. We find no error in the procedure employed.

### X. POLYGRAPH RESULTS BEFORE THE GRAND JUROR

Defendant complains that his indictment and bindover should be quashed because the grand juror entertained evidence of polygraph results. Once again, this issue has not been preserved for appellate review, but is raised for the first time on appeal. Failure to file a motion to quash precludes appellate review of this issue. *People v Brown,* 126 Mich App 282; 336 NW2d 908 (1983).

Because a grand jury (or grand juror) is not constrained by the rules of evidence and may consider all sources of evidence, it is not precluded from considering polygraph results. "It would run counter to the whole history of the grand jury institution" to permit an indictment to be quashed because incompetent evidence was presented to the grand jury (or grand juror). *United States v Williams, supra,* 504 US —; 112 S Ct 1743; *Bank of Nova Scotia v United States,* 487 US 250; 108 S Ct 2369; 101 L Ed 2d 228 (1988). The grand juror, exercising the rights of the public to "every man's evidence," *Branzburg v Hayes,* 408 US 665; 92 S Ct 2646; 33 L Ed 2d 626 (1972), requires wide latitude to investigate alleged criminal activity free of traditional constraints. Its function is not ultimately to determine guilt or innocence, but merely to investigate crime and determine probable cause. This argument is without merit.

### XI. SENTENCING

Defendant finally contends that his sentence is disproportionate because his participation in the crime was minimal. We disagree. Defendant's sentence of thirty to fifty years was within the guidelines. Defendant has not overcome the presumption of proportionality. *People v Milbourn,* 435

Mich 630; 461 NW2d 1 (1990); *People v Dukes,* 189 Mich App 262; 471 NW2d 651 (1991).

Defendant also contends that the sentencing court erred in scoring twenty-five points for Offense Variable (OV) 3 and OV 4. Appellate review of scoring decisions is very limited. *People v Ratkov (After Remand),* 201 Mich App 123, 126; 505 NW2d 886 (1993). This Court affirms a scoring decision if evidence exists to support the score. Defendant contends OV 3 should have been scored at ten points, rather than twenty-five. A score of ten points is proper where the killing is intentional, but death occurred in a combative situation or in response to victimization. In stating that it had no discretion to score other than twenty-five points, the court only meant that the factors showing a combative situation or response to victimization were not present on this record. No error arose in the scoring of the offense variables.

Defendant also objects to the scoring of twenty-five points for OV 4, Aggravated Physical Assault. Evidence plainly supports the scoring decision. The number and location of the wounds on Douglas Perry's back revealed that he could not defend himself against his attacker or defendant. The numerous stab wounds inflicted on the victim were obviously aggravated injuries.

Affirmed.