# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MALCOLM XAVIER JEFFRIES,

        Defendant-Appellant.

UNPUBLISHED
May 18, 2017

No. 330461
Kent Circuit Court
LC No. 14-011763-FC

---

Before: MARKEY, P.J., and MURPHY and METER, JJ.

PER CURIAM.

Defendant, Malcolm Xavier Jeffries, appeals by right his jury conviction of perjury during an examination held pursuant to a prosecutor's investigative subpoena. See MCL 767A.9(1)(b). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 40 to 100 years in prison for his conviction. We affirm.

## I. BASIC FACTS

In November 2014, the prosecution charged defendant with knowingly making a false statement while under oath during an examination conducted under the authority of an investigative subpoena. More specifically, the prosecution alleged that, at an examination under oath held in October 2014, defendant had lied about his knowledge or communications regarding the beating death of Christopher Joel Battaglia in 1990.

At trial, the prosecution presented evidence that defendant had denied under oath that he had information about Battaglia's murder—whether from firsthand knowledge or through information provided by a third party. The prosecution also elicited testimony from four witnesses whose testimony, if believed, established that defendant either had knowledge of Battaglia's murder when he testified or told them that he did not testify truthfully when examined under oath. Indeed, there was testimony indicating that defendant directly participated in the assault on Battaglia. Defendant challenged the credibility of the witnesses at trial and testified that his statements under oath were accurate. The jury chose to believe the prosecution's witnesses and found defendant guilty of perjury.

Defendant now appeals in this Court.

-1-

## II. EXAMINATION UNDER INVESTIGATIVE SUBPOENA

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant first argues that the prosecutor acted contrary to the statutes authorizing investigative subpoenas by presenting him with the subpoena and then immediately examining him under oath without any advance notice and without allowing him an opportunity to consult with a lawyer. He further contends that the prosecutor failed to advise him of his rights, as required by the decision in *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and did not provide him with counsel when he requested a lawyer. According to defendant, by proceeding to immediately place him under oath and question him, the prosecutor wrongfully prevented him from exercising his statutory right to have a lawyer present, prevented him from availing himself of the statutory procedure for objecting to the subpoena, and ran afoul of his Fifth Amendment rights.

In order to preserve a claim of error for appeal, the party asserting the error must raise the issue before the trial court. *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011). Defendant asserted throughout the lower court proceedings that he was never served with the investigative subpoena and that the prosecutor, detectives, and trial court fabricated the evidence that he was served. He did state in his motion to dismiss—without further elaboration—that the subpoena did not comply with MCL 767A.4(1)(a)-(g) and (2). However, in his request for relief, defendant asserted that it did not comply because he was never served with the subpoena. He also did not argue that his examination was invalid either because he was not read his *Miranda* rights or because the subpoena violated his rights under the Fifth Amendment. It is insufficient to preserve a challenge for appeal by raising a different ground on appeal than was raised before the trial court. *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996). Because this claim involves challenges that he did not make in the trial court, it is unpreserved.

This Court reviews de novo whether the trial court properly applied constitutional law to undisputed facts. *People v Martin*, 271 Mich App 280, 297; 721 NW2d 815 (2006). We also review de novo the proper interpretation and application of statutes. *People v McKerchie*, 311 Mich App 465, 471; 875 NW2d 749 (2015). This Court, however, reviews unpreserved claims of error—including constitutional claims—for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). In order to establish a plain error that warrants relief, a defendant must show that the error was clear or obvious, that it affected the outcome of the lower court proceedings, and that the error resulted in the conviction of an actually innocent defendant or seriously affected the integrity, fairness, or public reputation of the proceedings independent of the defendant's innocence. *Id.* at 763.

### B. ANALYSIS

The Legislature enabled prosecuting attorneys to petition a court to authorize an investigative subpoena in order to investigate the commission of a felony. MCL 767A.2(1). The petition must include—in relevant part—a brief description of the felony being investigated, the name of each person to be questioned, and a "brief statement of the facts establishing the basis for the prosecuting attorney's belief that the testimony of the person . . . is relevant to the investigation of a felony described in the petition." MCL 767A.2(2). "A judge may authorize"

the prosecutor to issue a subpoena if the prosecutor properly petitions the court in compliance with MCL 767A.2, if "the judge determines there is reasonable cause to believe a felony has been committed," and if "the judge determines there is reasonable cause to believe that . . . [t]he person who is the subject of the investigative subpoena may have knowledge regarding the commission of the felony." MCL 767A.3(1). The order authorizing the subpoenas must, in relevant part, include a "statement identifying each felony to be investigated" and a "statement listing each person to whom an investigative subpoena may be issued." MCL 767A.3(2).

The prosecutor petitioned the district court for authorization to subpoena several witnesses, including defendant. The district court entered an order authorizing the prosecutor to issue subpoenas to the identified witnesses on October 16, 2014. In the order, the district court provided that the prosecutor's petition was "properly filed" under MCL 767A.2(2), and it found that there was "reasonable cause to believe that a felony has been committed"—namely, the murder of Battaglia on June 11, 1990—and that the "persons identified in the Petition . . . are potential witnesses who may have information relevant to the investigation" of the murder. Thus, the district court's order complied with the requirements of MCL 767A.3(1) and (2), and authorized the prosecutor to issue an investigative subpoena to defendant. The prosecutor then signed a subpoena directed to defendant on the same day.

The Legislature provided that an investigative subpoena must contain the "name of the person to whom it is directed and his or her address, if known." MCL 767A.4(1)(a). It must also include, in relevant part, the "time and place for taking the person's testimony," a statement that the subpoena has been issued under "this section," and a "statement identifying the criminal activity being investigated." MCL 767A.4(1)(b)-(d). The subpoena must also include a statement that the "person may object to the investigative subpoena or file reasons for not complying with the investigative subpoena by filing a written statement of objection or noncompliance with the prosecuting attorney on or before the date scheduled for the questioning . . . ." MCL 767A.4(1)(f). The statement informing the person of his or her right to object must also inform the person that the prosecutor "may seek an order compelling compliance . . . ." *Id*. Finally, the subpoena must include a "statement that the person may have legal counsel present at all times he or she is being questioned . . . ." MCL 767A.4(1)(g). The prosecutor must serve the subpoena "not less than 7 days before the date set for the taking of testimony . . . unless the judge who issued the authorization for that investigative subpoena has shortened that period of time for good cause shown." MCL 767A.4(2).

In this case, the prosecutor's subpoena properly named defendant and listed his last known address. See MCL 767A.4(1)(a). It did not, however, include a time and place for the taking of defendant's testimony—presumably because the district court authorized the prosecutor to issue a subpoena allowing the taking of testimony at the time "service is accomplished on the witness," which was done in this case. See MCL 767A.4(1)(b).[1] The prosecutor identified the public act and section of the criminal code under which the subpoena was authorized and

---

[1] The district court's order also stated that "[t]he People have established good cause for the waiver of the seven-day service period[.]" MCL 767A.4(2).

-3-

identified the criminal activity being investigated in the subpoena. See MCL 767A.4(1)(c) and (d). The subpoena also included a statement that defendant could object or file reasons for not complying on or before the date that he was scheduled to appear, although it did not contain a statement informing him that the prosecutor "may seek" an order compelling compliance. MCL 767A.4(1)(f). The subpoena did include a statement that defendant's failure to appear "may subject" him to penalty for contempt of court. The subpoena additionally contained a statement that defendant "may have legal counsel present at all times" during the questioning and that he retained "all rights granted under the state and federal constitutions including the right against self-incrimination." Finally, the subpoena included a statement that defendant had the right to "refuse to answer any question if a truthful answer to the question may incriminate [him]."

A few days before the examination, defendant had been arrested and released on a minor unrelated matter, with his phone being retained by authorities and subjected to examination under a search warrant. The police contacted defendant shortly after his release, informing him that he could retrieve his phone at the courthouse. There was evidence that, when defendant arrived at the courthouse, he was served with the investigative subpoena, reviewed the subpoena, agreed to be questioned, was placed under oath, and was then examined by a prosecutor. A video recording of the examination showed defendant swearing under oath to tell the truth. The prosecutor verbally informed defendant that he had the right to refuse to answer any question if a truthful answer to the question would tend to incriminate defendant. Defendant responded that there was nothing he could say that would incriminate him, so the prosecutor should feel free to ask him anything. The prosecutor also informed defendant that his testimony could be used against him in a criminal proceeding. The prosecutor further informed defendant that if he had a lawyer, defendant would be given every opportunity to talk to counsel should he wish to do so. Defendant indicated that he understood his rights and was prepared to be examined. After background facts were discussed and foundational information was elicited, defendant adamantly denied having any knowledge or information whatsoever concerning the Battaglia beating and death. Thereafter, when the prosecutor indicated to defendant that he was perjuring himself, defendant asked whether he needed an attorney and then immediately asked whether he could have an attorney given the perjury accusation.[2] The prosecutor responded that defendant had a right to have an attorney present. Defendant, however, simply continued speaking and the examination proceeded, absent a demand by defendant for counsel and absent any invocation of the right against self-incrimination. The recording, which was played for the jury, revealed that defendant had already committed perjury, as relevant to this case and the Battaglia killing, prior to defendant's first mention of an attorney, and he continued to perjure himself after raising the issue of counsel.

On appeal, defendant maintains that the perjury conviction must be vacated because the prosecutor had proceeded to examine him immediately after service of the subpoena and, as a result, he did not have a meaningful opportunity to object to the subpoena or seek the assistance

---

[2] This occurred about 45 minutes into the examination.

of counsel.[3]  As noted earlier, MCL 767A.4(1)(f) provides that a subpoena must include a statement that the person may object to the subpoena.  And MCL 767A.5(3) states that the person being examined "may have legal counsel present in the room in which the inquiry is held" and that the person "may discuss fully with his or her legal counsel any matter relating to the person's part in the inquiry without being subject to citation for contempt."  The subpoena, which defendant reviewed, included statements informing defendant of these rights.  Under MCL 767A.6(1), a prosecutor must seek a court order to compel compliance with the subpoena if the person objects to, or fails or refuses to comply with, the subpoena.  Normally, a person will have at least 7 days within which to object and seek legal counsel.  MCL 767A.4(2).  But the Legislature also enabled the judge who authorized the subpoena to shorten the period for "good cause shown."  *Id.*  And, as noted earlier, the judge in this case found that there was good cause to shorten the period, authorizing the prosecutor to examine defendant "as soon as service is accomplished."  Defendant does not argue that the trial court erred in finding "good cause" for purposes of shortening the notice period, so that issue is not before us.  Contrary to defendant's contention on appeal, the shortened period also did not deprive him of either the opportunity to object or the right to consult with a lawyer.  As stated in the subpoena, defendant had the right to "object to this investigative subpoena or file reasons for not complying by filing a written statement of objection or noncompliance with the prosecuting attorney *on or before* the date" of defendant's appearance.  (Emphasis added.)  It is undisputed that the prosecuting attorney was

---

[3] We note that defendant has failed to present any meaningful argument or legal analysis showing that vacation of the verdict predicated on suppression of his statements made at the examination is the proper or applicable remedy for the claimed statutory and constitutional violations in the context of a perjury case based on testimony given under oath at the examination.  In *People v Bassage*, 274 Mich App 321, 327; 733 NW2d 398 (2007), this Court remarked:

> [Even] if the prosecutor had violated his duty not to present false testimony to obtain a conviction, or failed to properly advise defendant of his Fifth Amendment right, the prosecutor's wrongful conduct would not have excused or protected defendant's decision to lie under oath. Our system of justice is founded upon truthful testimony, and no one—neither witness nor party—can take the oath and then lie from the witness stand with the justification that the government violated his or her rights in securing that testimony.  [Citations omitted.]

In *People v Earls*, 477 Mich 1119, 1119; 730 NW2d 241 (2007), our Supreme Court stated that where a statutory error does not constitute an error of constitutional dimensions, the exclusionary rule is inapplicable unless the statute itself calls for the rule's application.  And the Court held that there is no language in the text of MCL 767A.1 *et seq.*, the statutory scheme involved here, indicating a legislative intent to impose the drastic remedy of exclusion of evidence for a statutory violation.  That said, for purposes of our analysis, we shall give defendant the benefit of an assumption that suppression leading to vacation of the verdict would be a proper remedy in the context of this case.

present for defendant's examination, and there was evidence that defendant had reviewed the subpoena. As such, defendant could have written out his objections and handed them to the prosecutor at the examination. Indeed, he could have objected on the basis of the fact that he had not been afforded an opportunity to seek legal counsel. If he had done so, the prosecutor's only recourse, other than obtaining a different time for the examination in order to allow defendant time to find an attorney, would have been to file a motion with the judge who authorized the subpoena to compel defendant to comply. See MCL 767A.6(1). In that case, defendant would have been entitled to a hearing and could have brought his grievances before the court. MCL 767A.6(2). Defendant retained the right to object and his right to seek counsel even with the shortened period of service. He fails to provide us with any reasonable argument excusing his failure to exercise his rights to object and seek counsel, nor does defendant indicate or suggest that the prosecutor prevented him from exercising those rights. Indeed, a review of the recording reveals that defendant was more than happy to proceed with the examination and completely prepared to answer whatever questions were posed to him. He displayed a very confident demeanor.

Defendant also complains that the prosecutor failed to provide him with a lawyer when he asked for one after the prosecutor accused him of perjury during the examination. His argument is premised on the theory that he was entitled to counsel provided by the state at that juncture of the examination, which would have halted the examination; he does not appear to contend that the examination should have been stopped in order to afford him the opportunity to privately retain counsel. We first note that, generally speaking, a defendant's request for counsel "must be unequivocal" and that the cessation of questioning is not required where a defendant makes an ambiguous or equivocal reference to an attorney that can reasonably be understood as only indicating that the defendant "*might be invoking* the right to counsel." *People v Tierney*, 266 Mich App 687, 711; 703 NW2d 204 (2005) (emphasis added). Here, defendant first asked whether he needed an attorney and then asked whether he could have an attorney, with the prosecutor informing him that he had a right to have an attorney present. But defendant did not reply that he wanted to exercise any such right and instead continued speaking to the prosecutor. Given the circumstances, we cannot conclude that defendant made an unequivocal request for counsel.

Further, the statutory scheme pertaining to investigative subpoenas says nothing with respect to the appointment of counsel for indigent defendants. And a criminal defendant's Sixth Amendment right to counsel only attaches at the "initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery v Gillespie Co, Texas*, 554 US 191, 198; 128 S Ct 2578; 171 L Ed 2d 366 (2008) (quotation marks and citations omitted). The prosecutor had not initiated a judicial criminal proceeding against defendant in this case at the time of the examination. This Court has noted "the similarities between a grand-jury proceeding and an investigative-subpoena hearing," *People v Farquharson*, 274 Mich App 268, 275; 731 NW2d 797 (2007), and there is "no Sixth Amendment right to the presence of counsel during [a] grand jury appearance," *People v Hoffman*, 205 Mich App 1, 13; 518 NW2d 817 (1994). Similarly, we conclude that defendant did not have a Sixth Amendment right to counsel, appointed or otherwise.

"[T]he Fifth Amendment right to counsel is a corollary to the amendment's stated right against self-incrimination and to due process." *People v Marsack*, 231 Mich App 364, 372-373;

586 NW2d 234 (1998). The Fifth Amendment right to counsel attaches when a defendant is subject to custodial interrogation. *Id.* at 374. Contrary to defendant's contention in this case, he was simply not in "custody" during the investigative-subpoena examination; he was permitted to object to, or refuse to comply with, the subpoena, along with being entitled to a hearing if the prosecutor moved for an order compelling compliance. MCL 767A.4(1)(f); MCL 767A.6.[4] Defendant was also not under arrest at any point before, during, or immediately after the examination. Once again by way of analogy, the *Hoffman* panel stated that the target of a grand jury proceeding does not "have the derivative Fifth Amendment right to appointed counsel[.]" *Hoffman*, 205 Mich App at 13. Defendant did not have a Fifth Amendment right to counsel, appointed or otherwise.

Moreover, assuming for the sake of argument that the prosecutor was required to stop the examination when defendant raised the issue of obtaining counsel, either because he was entitled to a court-appointed attorney or entitled to an opportunity to procure or retain private counsel under the investigative-subpoena statutes, defendant simply cannot establish the requisite prejudice for purposes of plain error review. At the point when defendant asked whether he could have an attorney, he had already perjured himself, repeatedly denying that he had any knowledge or information concerning the assault. Reversal is unwarranted.

Defendant next complains that the prosecutor and the officers present at the examination failed to advise him of his *Miranda* rights. Under *Miranda*, when a person is subjected to a custodial interrogation, he or she must be warned prior to any questioning that the person has the right to remain silent, that anything said can be used against the person in a court of law, that the person has the right to the presence of counsel, and that if he or she cannot afford an attorney, one will be appointed for the person before questioning if desired. *Miranda*, 384 US at 478-479. Here, as reflected earlier in this opinion, the prosecutor verbally informed defendant that he had the right to refuse to answer any question if a truthful answer to the question would tend to incriminate defendant, that his testimony could be used against him in a criminal proceeding, and that defendant would be given every opportunity to talk to retained counsel should he wish to do so.[5] The language in the subpoena itself also advised defendant of his constitutional rights, "including the right against self-incrimination."

We first note the difference between the broad, all-encompassing right to remain silent under *Miranda* and the Fifth Amendment and, under MCL 767A.5(5), the right to refuse to answer a particular question that, if answered truthfully, would tend to incriminate a person. In *Hoffman*, 205 Mich App at 10-11, this Court explained the distinction in the context of a grand jury subpoena, stating:

---

[4] We note that at a hearing on a motion to compel compliance, the court cannot order a person "to answer a question . . . if answering that question . . . would violate a statutory privilege or a constitutional right." MCL 767A.6(5).

[5] MCL 767A.5(5) provides that "[t]he prosecuting attorney shall inform the person of his or her constitutional rights regarding compulsory self-incrimination before asking any questions under an investigative subpoena."

We are also persuaded that the actual substance of the *Miranda* warnings is not required by the federal constitution in this context. The warnings would convey inaccurate advice to a grand jury target. First, advice to a grand jury target that the target possesses an absolute "right to remain silent" is wrong. No such right exists for a grand jury witness or target. A grand jury witness must answer all questions, subject only to a valid Fifth Amendment claim if a truthful answer would incriminate him. Even if a grand jury witness asserts the privilege, the prosecutor need not cease all questioning, but need only cease questioning regarding the particular subject involving the privilege. A target or witness who testifies, unlike an individual subject to custodial police interrogation, cannot prevent further questioning. The Fifth Amendment privilege in the grand jury translates to an *option of refusal,* not a prohibition of inquiry. [Citations and quotation marks omitted.]

As reflected in the video recording, the prosecutor informed defendant of his right against compelled self-incrimination as to particular questions and that his answers could be used against him in a court of law, and the *Hoffman* panel ruled that such a warning sufficed in a grand jury setting relative to *Miranda* requirements. *Hoffman*, 205 Mich App at 13-14 ("verbatim recital of the words of the *Miranda* opinion is not required"[;] rather, the interrogator must merely "communicate the substance of *Miranda* warnings"). Although defendant was not informed that an attorney would be appointed for him if he could not afford an attorney, defendant was not, for the reasons discussed earlier, statutorily or constitutionally entitled to *appointed* counsel based on indigency. We note that in *Hoffman*, this Court held that "the federal constitution does not require the administration of *Miranda* warnings, including the right of appointed counsel, before questioning of a target of a grand jury inquiry" and that "*Miranda* is confined to cases involving custodial interrogation in a police-dominated atmosphere." *Hoffman*, 205 Mich App at 6, 8. Again, defendant's examination pursuant to the investigative subpoena did not entail a custodial interrogation.

Finally, defendant claims that the prosecutor's use of an investigative subpoena amounted to, "in effect," an "invalid 'reverse writ' " that requires the suppression of his statements, citing *People v Mallory*, 421 Mich 229; 365 NW2d 673 (1984). The "reverse writ" involved a procedure where police officers in Detroit sought judicial approval for the extended detention of a suspect without issuing a warrant. See *People v Casey*, 411 Mich 179, 180 n 1; 305 NW2d 247 (1981). Our Supreme Court held that the use of such a procedure to detain a suspect is unlawful because it is a nullity that has no basis in the constitution or statutes. *Id.* at 181. In *Mallory*, our Supreme Court held that evidence obtained through such an illegal detention generally must be suppressed. *Mallory*, 421 Mich at 240. Here, the Legislature specifically authorized the use of investigative subpoenas, with built-in constitutional protections, and defendant submitted to examination under oath pursuant to that statutory scheme. Therefore, this case does not involve the type of unauthorized proceeding to detain a suspect addressed in *Mallory* and *Casey*.

In sum, there were no plain errors affecting defendant's substantial rights.

## III. WAIVER OF RIGHT TO COUNSEL

### A. STANDARD OF REVIEW

Defendant next argues that the trial court erred when it allowed him to represent himself at trial. Specifically, he contends that the trial court did not substantially comply with the requirements of MCR 6.005 and our Supreme Court's decision in *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), with respect to self-representation and waiver of the right to counsel. This Court reviews the trial court's factual findings underlying a defendant's waiver of the right to counsel for clear error. *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). "However, to the extent that a ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *Id.* (citations omitted).

### B. ANALYSIS

"The Sixth Amendment of the United States Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides that '[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence.' " *People v Kammeraad*, 307 Mich App 98, 122; 858 NW2d 490 (2014) (citation omitted; alteration and ellipsis in original). "The analogous provision of the Michigan Constitution provides that '[i]n every criminal prosecution, the accused shall have the right to . . . have the assistance of counsel for his or her defense[.]' " *Id.*, quoting Const 1963, art 1, § 20 (alterations and ellipsis in original).

"The right of self-representation is secured by both the Michigan Constitution, Const 1963, art 1, § 13, and by statute, MCL 763.1." *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013). "The right of self-representation is also implicitly guaranteed by the Sixth Amendment of the United States Constitution." *Id.* "[A]lthough the right to counsel and the right of self-representation are both fundamental constitutional rights, representation by counsel, as guarantor of a fair trial, 'is the standard, not the exception,' in the absence of a proper waiver." *Russell*, 471 Mich at 189-190 (citations omitted). The *Russell* Court reviewed its earlier decision in *Anderson* and MCR 6.005(D), observing:

> In *People v Anderson,* this Court applied the . . . standard for self-representation and established requirements regarding the judicial inquest necessary to effectuate a valid waiver and permit a defendant to represent himself. Upon a defendant's initial request to proceed pro se, a court must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business.
>
> In addition, a trial court must satisfy the requirements of MCR 6.005(D), which provides in pertinent part as follows:

"The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first

> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer."

> In [*People v*] *Adkins* [*(After Remand)*], [452 Mich 702; 551 NW2d 108 (1996),] this Court clarified the scope of judicial inquiry required by *Anderson* and MCR 6.005(D) when confronted with an initial request for self-representation. *Adkins* rejected a "litany approach" in favor of a "substantial compliance" standard[.] [*Russell*, 471 Mich at 190-191 (citations omitted).]

After he disagreed with his trial counsel over the propriety of challenging the authenticity of the video and transcript of his examination under oath, defendant asserted his right to represent himself through motions filed on his own behalf and orally at a hearing held in July 2015. At the July hearing, the trial court considered appointed counsel's argument that there had been a breakdown in his relationship with defendant that warranted the appointment of a new lawyer. Counsel stated that the breakdown was in part caused by his refusal to file motions related to defendant's claim that the transcript from his examination had been altered. Counsel expressed that he did not file the motions because he did not "see any factual basis" for doing so.

Defendant told the trial court that he also wanted a new lawyer because he had never given counsel permission to seek a competency examination. The court interrupted, "Well, quite frankly, sir, if he didn't file that motion, he would be ineffective . . . ." When defendant asked how that would amount to ineffective assistance, the court explained that defendant was not a lawyer and did not have a "clear understanding" of procedures or policies. Defendant responded that he did "have a clear understanding." The court then asked defendant several questions to see how well he understood criminal procedure and the rules of evidence. When defendant protested that he had a constitutional right to represent himself, the trial court explained the risks of proceeding without a lawyer:

> You're charged with perjury. That is a life or any term of years. And you're also charged with a—with a fourth felony supplement. You—you have a right to represent yourself. But I'm going to tell you right now. I've been doing this for 30 years. And probably seven or eight time[s], I have either sat as a judge over someone who has represented themselves, or like [counsel], been appointed to . . . sit there while—while the defendant represents himself. Every single time, there has been a conviction. Every single time, the jurors think[] it's a joke that you're representing yourself. I'm being straight forward with you here. Okay?

The trial court reminded defendant that he did not know the rules of evidence and warned him that the court was not "Judge Judy" or the "People's Court" and would hold him to the

"exact same standard of understanding the legal theories and the rules of laws[] that I would an attorney." The court also expressed confidence in counsel's ability to defend defendant and told defendant that it was counsel's job to tell him "what the realities of the circumstances are." The court told defendant that he might not like the answers that counsel gave him, but it was better than having a lawyer who told him everything was wonderful only to "end up with life in prison and wonder what the heck [was] going on."

After warning defendant about the dangers of self-representation and the nature of the charge and possible penalty, the trial court stated that it saw "no reason to dismiss" appointed counsel. It acknowledged that defendant had the right to represent himself and told him that he would have to make his selection right now. The court indicated that counsel would have to remain as stand-by counsel if defendant represented himself. It also warned defendant that if he disrupted the "court in any way, you will be sitting in lock up and he [counsel] will continue with the trial." The court and defendant then had the following short exchange:

> THE COURT: Now, after we've had our little discussion here, do you really wish to represent yourself?
>
> DEFENDANT: I'm forced to.
>
> THE COURT: No, I'm not asking you if you're forced. I'm asking you yes or no.
>
> DEFENDANT: Yes. I don't have a choice.
>
> THE COURT: All right. Then you're going to represent yourself. All right? And we're—and this hearing is done. Let's go.

As can be seen, defendant told the trial court that he felt compelled to represent himself because the court refused to appoint him a new lawyer. Although defendant had the right to the assistance of counsel at state expense, he did not have the right to the appointed counselor of his choice. *Russell*, 471 Mich at 192-193 n 25. And his insistence that the trial court should appoint him a different lawyer did not alter the fact that he stated that he preferred to represent himself rather than have current counsel represent him. Thus, this case is not like that in *Russell* where the defendant insisted that the trial court appoint substitute counsel, but nevertheless also insisted that he did not want to represent himself. *Russell*, 471 Mich at 192-193. Examining his comments as a whole and in light of his written motions to represent himself, defendant unequivocally asserted that he preferred to represent himself rather than proceed with the lawyer appointed to represent him. *Anderson*, 398 Mich at 367.

The trial court also properly ensured that defendant's decision was knowingly, intelligently, and voluntarily made at the hearing. The court plainly made him "aware of the dangers and disadvantages of self-representation." *Id.* at 368. It emphasized that defendant did not have the requisite skill and training to conduct a trial and warned him that in 30 years every defendant who had tried to represent himself had been convicted. The trial court even warned that the jurors in those cases had thought that the defendant's decision to represent himself was a "joke." Moreover, defendant demonstrated that he had the ability to raise issues before the court

-11-

by motion and asserted that he had a clear understanding of the procedures and policies that would apply. He was also undaunted by the trial court's admonishment that it would hold defendant to the same standards that it would any lawyer appearing before the court. Taken together, these factors demonstrate that defendant's assertion of his right to self-representation was knowingly, intelligently, and voluntarily made. *Id.* at 370-371.

The trial court did not make a specific finding whether defendant's assertion of his right to represent himself would disrupt the proceedings, but it did address the potential for disruption. Specifically, the court told defendant that it would lock him up and have counsel finish the trial if he disrupted the proceedings. The trial court adequately addressed all three factors discussed in *Anderson*.

The trial court also addressed the factors required under MCR 6.005(D). Contrary to defendant's assertion on appeal, the trial court specifically warned him that he was facing a perjury charge and could be sentenced to life in prison. Defendant also had been able to consult with counsel, and the court retained counsel as stand-by counsel. Defendant even used counsel to argue motions for him at trial, and later asked the court to allow counsel to complete the trial. The trial court additionally asked defendant if he wished to continue to represent himself before proceeding on the first and second days of trial, and it ordered counsel to represent defendant after defendant decided that he no longer wanted to represent himself. See MCR 6.005(E). Accordingly, the trial court complied with the requirements of both MCR 6.005(D) and MCR 6.005(E). Reversal is unwarranted.

## IV. RIGHT TO PRESENT A DEFENSE

### A. STANDARD OF REVIEW

Defendant next argues that the trial court violated his constitutional right to present a defense when it summarily precluded him from calling several witnesses on the ground that he had failed to disclose the witnesses before trial. This Court reviews a trial court's decision whether to permit the late endorsement of a witness for an abuse of discretion. *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes. *Id.*

### B. ANALYSIS

A defendant has a constitutional right to present a defense, which includes the right to call witnesses on his or her own behalf. *Id.* "But this right is not absolute: the accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.*, quoting *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984), quoting *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973) (internal quotation marks omitted). When a defendant seeks the late endorsement of a witness, the trial court must weigh "the competing interests involved" before selecting a remedy for the violation. *People v Merritt*, 396 Mich 67, 82; 238 NW2d 31 (1976). The court should inquire "into all the relevant circumstances, including the causes and bona fides of tardy, or total, noncompliance, and a showing by the objecting party of actual prejudice." *People v Davie (After Remand)*, 225 Mich App 592, 598; 571 NW2d 229 (1997)

(citation and quotation marks omitted). Preclusion is an extreme sanction, and trial courts should resort to it only in egregious cases. *Merritt*, 396 Mich at 82. Where the preclusion sanction is contemplated, the issue becomes whether "the possible risk of false testimony and the interruption in the orderly administration of justice justify th[e] intrusion on the defendant's right" to present a defense. *Id.* at 82-83.

The trial court summarily rejected defendant's request to have his witnesses testify. It did not explore the nature of their potential testimony, their availability, or the amount of time that it would take to obtain their testimony and provide the prosecutor with an adequate opportunity to prepare, and the court did not consider any other relevant factor. By resorting to the extreme sanction of preclusion without weighing the competing interests at issue, the trial court arguably abused its discretion to fashion an appropriate remedy for the discovery violation. Nevertheless, even if the trial court's decision constituted an abuse of discretion, that error would not warrant relief. Assuming that the trial court's decision to impose the severest sanction for a discovery violation amounted to constitutional error, the error was harmless beyond a reasonable doubt. See *People v Anderson (After Remand)*, 446 Mich 392, 405-406; 521 NW2d 538 (1994).

On appeal, defendant maintains that the witnesses who knew his former girlfriend—namely, her family and friends—would have impeached her credibility. He does not suggest that the witnesses otherwise had any firsthand knowledge about Battaglia's murder or defendant's knowledge about the murder. Defendant also has not provided any indication that any of the witnesses would have testified on his behalf, and he has not identified how they would have testified. Defendant suggested at trial that his former girlfriend had a motive to fabricate her testimony because he purportedly had an affair with her mother, but he testified that the affair occurred after he got out of jail, which was months after the girlfriend made her first statement to police officers in 1990. There was also testimony that the ex-girlfriend's statement under oath did not differ from her original statement. It is for that reason difficult to see how the proposed impeachment testimony—assuming that the witnesses would have proffered such testimony—might have undermined the girlfriend's credibility. Additionally, the prosecution presented three other witnesses who testified that defendant had knowledge of Battaglia's murder. One witness testified that he saw his brother and defendant actively participating in the assault that resulted in Battaglia's death. A prisoner who was incarcerated with defendant testified that defendant told him that he lied at the examination under oath. Defendant's sister also testified that defendant told her that he was not forthcoming at his examination under oath. Although these witnesses each had credibility issues, defendant does not claim that his proposed witnesses had any testimony to impeach them.

As for the individual known as "Panda," the parties stipulated at trial that officers located and interviewed a man with that nickname and verified that he was in jail at the same time as defendant. They further stipulated that the witness said he had no memory of defendant, let alone of speaking with him about a murder. Defendant claims on appeal that "Panda" was a key witness, but he offers no evidence that Panda would have testified differently than what was stipulated at trial.

Considering the extremely doubtful and limited nature of the proposed testimony in light of the evidence actually adduced at trial, we conclude that any error in the trial court's decision

-13-

to exclude the witnesses was harmless beyond a reasonable doubt. *Anderson*, 446 Mich at 405-406.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARD OF REVIEW

Defendant next argues that his trial counsel did not provide effective assistance. Because the trial court did not hold an evidentiary hearing on this claim of error, there are no factual findings to which this Court must defer, and this Court's review is for mistakes that are apparent on the record alone. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864 (2012). This Court reviews de novo whether defense counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and prejudiced his trial. *Id.* at 19-20.

### B. ANALYSIS

In order to establish his claim, defendant must show that defense counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for the errors, the result of the proceedings would have been different. *Id.* at 22.

First, defendant maintains that counsel should have challenged the prosecutor's subpoena and moved to suppress defendant's statements under oath on various grounds, mainly those discussed and rejected in Section II of this opinion. In light of our rulings in Section II, defendant simply cannot establish deficient performance by counsel or prejudice on those matters; any objections or motions would have been meritless and futile. *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003) (stating that a claim of "[i]neffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion"). Defendant does contend that counsel should have challenged the district court's "good cause" determination for shortening the seven-day notice period under MCL 767A.4(2). However, in support, defendant merely argues that the "facts show there was no 'good cause.' " Defendant does not elaborate and identify the facts that allegedly undermined the finding of good cause. As such, defendant has failed to establish the factual predicate for his claim of ineffective assistance. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). His speculative argument also fails to show the required prejudice. *Id.*

Defendant also briefly maintains that counsel had an obligation to provide him with guidance on the proper manner for filing a witness list. However, by the time of defendant's request for permission to secure the witnesses at issue, counsel was no longer acting as defendant's attorney; he was acting as stand-by counsel. Defendant had no constitutional right to the effective assistance of stand-by counsel. *People v Kevorkian*, 248 Mich App 373, 422-427; 639 NW2d 291 (2001). Therefore, this claim of error is also without merit. Furthermore, consistent with our earlier discussion regarding the witnesses that defendant sought to call to testify, he cannot establish the requisite prejudice.

Finally, defendant argues that counsel was ineffective for failing to object to the testimony of the witness who indicated that he saw defendant participate in Battaglia's murder. He contends that the testimony was irrelevant, offered for an improper purpose under MRE 404(b), and highly prejudicial.

It is doubtful that there could be testimony more relevant to the charge at issue. Defendant denied under oath that he had any knowledge of Battaglia's murder. The witness directly contradicted defendant's testimony; he testified that defendant participated in Battaglia's murder. If the jurors believed the witness, which they apparently did, there could be no more damning testimony—defendant must have had knowledge of Battaglia's murder because he helped beat Battaglia. Thus, the testimony was highly relevant. MRE 401.

It was also not barred under MRE 404(b). That rule bars the admission of other acts evidence if the only purpose for its admission is to prove that a defendant has bad character and acted in conformity with his or her bad character. See *People v VanderVliet*, 444 Mich 52, 63; 508 NW2d 114 (1993) ("If the proponent's only theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question, the evidence is not admissible."). The prosecutor properly elicited the witness's testimony to prove that defendant did in fact have knowledge of Battaglia's murder— knowledge he obtained by participating in his beating—notwithstanding that it also implicated his character. See MRE 404(b)(1) (stating that evidence of other acts is admissible to prove "knowledge").

Furthermore, although the testimony was plainly prejudicial, its probative value was also clearly not *substantially* outweighed by the danger of *unfair* prejudice. See MRE 403. "All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). The testimony did not involve a situation where there was a danger that marginally probative evidence would be given undue weight—that is, there was no probability that "evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect." *Id.* at 75-76 (quotation marks and citation omitted). The witness's testimony was by far the most logically relevant testimony on the matter of defendant's knowledge of the murder, and, in that regard, there was no less damaging means by which the prosecutor could have established defendant's knowledge. *Id.* at 76. Consequently, any objection to the testimony on the ground that it was barred under MRE 404(b) would have been futile. And counsel cannot be faulted for failing to make a frivolous motion. *Riley*, 468 Mich at 142.

Defendant has not established that his trial counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Gioglio*, 296 Mich App at 22.

-15-

## VI.  PROPORTIONATE SENTENCE

### A.  STANDARD OF REVIEW

Defendant also argues that the trial court's decision to sentence him to serve 40 to 100 years in prison for his perjury conviction is unreasonable.  This Court reviews de novo the proper interpretation and application of the sentencing guidelines.  *People v Steanhouse*, 313 Mich App 1, 38; 880 NW2d 297 (2015).  When determining whether a sentence that falls outside the range recommended under the now advisory sentencing guidelines is "reasonable" under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), we apply the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 634-636; 461 NW2d 1 (1990), and its progeny. *Steanhouse*, 313 Mich App at 47-48.  We review a sentence imposed by a trial court for an abuse of discretion in determining whether the sentence violated the principle of proportionality. *People v Hyatt*, __ Mich App __, __; __ NW2d __ (2016); slip op at 26.  A trial court abuses its sentencing discretion when its sentence is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636.

### B.  ANALYSIS

Although the sentencing guidelines are now advisory, the trial court was nevertheless required to score them properly and required to take the guidelines into consideration when imposing sentence. *Steanhouse*, 313 Mich App at 38-39.  The *Steanhouse* panel observed:

> The [*Milbourn*] Court also provided the following guidance for appellate courts reviewing a departure from the guidelines:
>
> "Where there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines. A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion. Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality."
>
> Factors previously considered by Michigan courts under the proportionality standard included, among others, (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation.  [*Steanhouse*, 313 Mich App at 45-46 (citations omitted).]

Trial judges are "entitled to depart from the guidelines if the recommended ranges are considered an inadequate reflection of the proportional seriousness of the matter at hand."

*Milbourn*, 435 Mich at 661. A sentence within the guidelines might be disproportionality lenient. *Id.*

Defendant does not challenge the trial court's scoring of the individual sentencing variables on appeal; he challenges the trial court's decision to sentence him to a minimum term that was 220 months higher than the highest recommended minimum sentence of 260 months in prison. The trial court scored 122 points under the prior record variables (PRVs) and 10 points under the applicable offense variables (OVs), which placed defendant in the II(F) grid for a class B felony involving public trust. MCL 777.17f; MCL 777.63. When modified for defendant's status as a fourth-offense habitual offender, see MCL 777.21(3)(c), the recommended minimum sentence range under the guidelines is 78 to 260 months in prison. MCL 777.63. Despite this recommendation, the trial court elected to sentence defendant to serve a minimum term of 480 months, which is 40 years, in prison.

The trial court departed from the recommended sentencing range because the sentencing guidelines did not adequately address several factors. According to the court, the guidelines applicable to a perjury offense did not take into consideration that the perjury involved a murder investigation and did not take into consideration the evidence that defendant was directly implicated in the murder. Indeed, the trial court found that defendant was "clearly involved." The court also impliedly found that defendant threatened and beat a witness to the murder. The court took notice that the detective involved in the investigation opined that defendant was a "significant threat." By intimidating witnesses, lying, and withholding testimony, the court opined that defendant had impacted the victim's family and the "entire community." The court stated that the guidelines also did not adequately reflect the degree of disrespect that defendant demonstrated to the court, the prosecutor, the police officers, and even his own counsel.

When considering whether a sentence is proportionate to the offender, a trial court can properly consider uncharged offenses, pending charges, and even acquittals if supported by reliable evidence. See *People v Lawrence*, 206 Mich App 378, 379; 522 NW2d 654 (1994). This Court has specifically indicated that a departure from the guidelines may be proportionate on contemplation of "facts underlying uncharged offenses." *People v Coulter (After Remand)*, 205 Mich App 453, 456; 517 NW2d 827 (1994); *People v Parr*, 197 Mich App 41, 46; 494 NW2d 768 (1992). The trial court presided over the trial and heard the evidence that tended to show that defendant had some involvement in Battaglia's murder and helped to prevent investigators from solving the murder for over 20 years. Again, one witness testified that he personally witnessed his brother and defendant punch and beat Battaglia. The evidence supported a finding that defendant participated in the killing and that his intimidation, lies, and eventual perjury were part of a continuous effort to subvert justice for Battaglia's family and the community as a whole. The length of time and severity of the conduct designed to interfere with the administration of justice, which culminated in the perjury at issue, were not adequately addressed under the guidelines. See MCL 777.49 (addressing the defendant's interference with the administration of justice). The trial court correctly observed that the guidelines applicable to the offense of perjury did not adequately address the subject matter of the perjury—namely, that the perjury involved a murder investigation. See MCL 777.31 to MCL 777.49a.

Further, as indicated in *Steanhouse*, 313 Mich App at 39, it is appropriate to consider, for purposes of sentencing and proportionality, a defendant's conduct while in custody, expressions

-17-

of remorse, and the potential for rehabilitation. At the sentencing hearing, as well as at earlier proceedings, defendant was hostile, belligerent, and disrespectful, flinging expletives at times.[6] The trial court remarked at sentencing:

> Sir. The disrespect that you have for everyone involved in here is not taken into [account] in those Guidelines. You've disrespected the Court. You've disrespected the prosecutor, the police, [and] your own defense attorney. These things are not taken into [account].

The trial court did appear to also take into consideration a detective's opinion that defendant posed a danger to society. In *People v Horn*, 279 Mich App 31, 44-45; 755 NW2d 212 (2008), this Court stated:

> As noted, defendant avers that the trial court's "continuing danger" reference is a subjective opinion. Although a trial court's "belief" that a defendant is a danger to himself and others is not in itself an objective and verifiable reason, objective and verifiable factors underlying this belief—such as repeated offenses and failures at rehabilitation—constitute an acceptable justification for an upward departure. . . . .

> [Although] a trial court's mere opinion or speculation about a defendant's general criminal propensity is not, in itself, an objective and verifiable factor, objective and verifiable factors underlying that conclusion or judgment are not categorically excluded as proper reasons for an upward departure. These factors include a history of recidivism, and obsessive or uncontrollable urges to commit certain offenses.

Here, the trial court noted that defendant had five prior felonies, one prior misdemeanor, and a juvenile court record, had been twice sentenced to jail, and had twice been sentenced to prison. The court also alluded to defendant's commission of perjury, his threatening of witnesses, his beating of one witness, and his deplorable behavior. Thus, to the extent that the trial court relied in part on a conclusion that defendant was a threat to society in shaping the sentence, the conclusion was supported by objective and verifiable factors, such as defendant's

---

[6] For example, during his allocution at sentencing, defendant stated:

> And you're a lying bitch [directed at the prosecutor]. And imma tell you to your face. And I don't give a f**k what the Judge do. You can go to hell, bitch. You a bitch. A piece of shit. And I hope your bitch ass rot in hell, you low life bitch.

> * * *

> I hope the Judicial Tenure Commission get you, man, because you not right. You're a dirty dog.

past criminal offenses, his failures at rehabilitation, his history of recidivism, and his behavior during the proceedings.

We appreciate that the departure was extensive; however, based on the record and the factors expressed by the trial court, all as discussed above, we cannot conclude that the court abused its discretion by imposing a sentence of 40 to 100 years' imprisonment. The sentence was "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636. Resentencing is unwarranted.

## VII. ISSUES SUBMITTED UNDER STANDARD 4

Defendant also submitted a brief on his own behalf under Supreme Court Administrative Order No. 2004-6, Standard 4.

In his Standard 4 brief, defendant argues numerous additional instances where his trial counsel purportedly was ineffective and claims that these instances—along with other grounds—show that the trial court erred when it denied his request for substitute counsel. He also argues that his conviction must be vacated because he was not served with the subpoena, and he maintains that the prosecutor engaged in misconduct that warrants a new trial. Specifically, he contends that she elicited false testimony, failed to call the original detectives who investigated Battaglia's murder, argued facts not in evidence and mischaracterized the evidence and record, and failed to turn over the autopsy report and photos from the investigation into Battaglia's death. Defendant also contends that there was insufficient evidence to support the charges against him and that the trial court should have directed a verdict in his favor on that basis. Finally, he maintains that the trial court should have granted his motion to recuse itself because the court was biased against him.

We have carefully considered each of these claims of error and conclude that they are entirely without any merit.

## VIII. CONCLUSION

For the reasons explained above, we affirm defendant's conviction and the sentence imposed by the trial court.

Affirmed.

/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Patrick M. Meter