# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

                Plaintiff-Appellee,

v

DAVID RAMON COLEMAN,

                Defendant-Appellant.

UNPUBLISHED
July 20, 2017

No. 329847
Wayne Circuit Court
LC No. 15-001347-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

                Plaintiff-Appellee,

v

JABARI HASSEN REGAINS,

                Defendant-Appellant.

No. 330129
Wayne Circuit Court
LC No. 15-001347-02-FC

---

Before: MARKEY, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

Defendants David Coleman and Jabari Regains were tried jointly, before separate juries. Each defendant was convicted of first-degree felony murder based on larceny, MCL 750.316(1)(b); first-degree home invasion, MCL 750.110a; armed robbery, MCL 750.529; felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony, MCL 750.227b.[1] The trial court sentenced Coleman to life imprisonment without parole for the felony-murder conviction and to concurrent prison terms of 15 to 25 years for the armed robbery conviction, 12 to 20 years for the home invasion conviction, and 2-1/2 to 5 years for the felon-in-possession conviction, to be served consecutively to a two-year term of imprisonment for the felony-firearm conviction. The court sentenced Regains to life imprisonment without parole for the felony-murder conviction and to concurrent prison terms of

---

[1] Regains was convicted of felony-firearm, second offense.

15 to 30 years for the armed robbery conviction, 10 to 20 years for the home invasion conviction, and 2 to 5 years for the felon-in-possession conviction, to be served consecutively to a five-year term of imprisonment for the felony-firearm conviction.[2] Coleman appeals as of right in Docket No. 329847, and Regains appeals as of right in Docket No. 330129. We affirm in both appeals but remand in Docket No. 330129 for the ministerial task of correcting the judgment of sentence.

Defendants' convictions arose from the robbery and shooting death of William Fultz inside the Detroit apartment of Johnnie Mae Parrott, where Fultz had been living. The prosecutor's theory at trial was that the defendants were aided by Fultz's friend, Sharnethia Wells, who visited Parrott's apartment on the night of December 28, 2014, and engaged in sexual relations with Fultz. Wells pleaded guilty to second-degree murder, MCL 750.317, in exchange for her testimony against defendants at trial.

Wells testified that she helped arrange for defendants to rob Fultz. At some point during the night of December 28, 2014, Wells left Parrott's apartment, but left the doors to the apartment and the building open or unlocked, enabling defendants to enter. Parrott testified that she woke up and discovered two men in her apartment, whom she was unable to identify at trial. One of the men pointed a gun at her and told her to be quiet. Fultz came out of his bedroom and asked the men what they wanted. The second man began going through Fultz's bedroom. Fultz charged at one of the men, and Parrott ran out of the apartment. As Parrott ran, she heard multiple gunshots. Parrott ran to another apartment and saw the two suspects leave her apartment, run to a car, and leave. When Parrott returned to her apartment, she searched for Fultz and eventually discovered his body in the basement of the building. He had received two gunshot wounds that caused his death.

## I. SUFFICIENCY OF THE EVIDENCE

Both defendants challenge the sufficiency of the evidence offered in support of their convictions. In reviewing a challenge to the sufficiency of the evidence in support of a conviction, this Court reviews the evidence de novo, viewing it in the light most favorable to the prosecution, to determine whether a rational trier of fact could have found that the essential elements of the charged crime were proven beyond a reasonable doubt. *People v Schaw*, 288 Mich App 231, 233; 791 NW2d 743 (2010). Circumstantial evidence and any reasonable inferences arising from the evidence may be sufficient to prove the elements of a crime. *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v John Williams, Jr*, 268 Mich App 416, 419; 707 NW2d 624 (2005). "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*.

Defendants do not dispute that sufficient evidence was presented to establish that each of the charged crimes were committed by someone. They argue only that the evidence was

---

[2] The judgment of sentence for Regains does not accurately reflect the sentences imposed for the felon-in-possession and felony-firearm convictions. Accordingly, we remand in Docket No. 330129 for the ministerial task of correcting the clerical errors in the judgment of sentence.

insufficient to establish their identities as participants in the crimes. We disagree. Identity is an essential element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Positive identification by a witness can be sufficient to support a conviction. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The credibility of identification testimony is for the trier of fact to resolve and this Court will not resolve the issue anew. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013); *Davis*, 241 Mich App at 700.

Parrott's testimony indicated that two men were involved in the offense, one of whom pointed a gun at her during the offense. Although Parrott was not able to identify the assailants, Wells expressly identified the robbers as defendants Coleman and Regains. Wells testified that she was with Coleman and Regains before the robbery, told defendants that Fultz had money, and helped plan the robbery. Wells testified, "I set up the murder." Wells testified that when she left the apartment, she left the apartment doors unsecured, thereby allowing Coleman and Regains to gain entry into the apartment. Parrott's testimony corroborated that Wells was at the apartment shortly before the robbery. The evidence was sufficient to permit the jury to find beyond a reasonable doubt that Coleman and Regains were the two men who broke into Parrott's apartment and murdered Fultz.

Defendants argue that the testimony of Wells and Parrott was not credible because they admitted to consuming drugs or alcohol on the night of the offense, and Wells had a motive to falsify her testimony to obtain the benefit of a favorable plea agreement, which allowed her to avoid a potential life sentence. However, the credibility of witness testimony is for the jury to resolve and this Court does not resolve it anew. *Dunigan*, 299 Mich App at 582; *Williams,* 268 Mich App at 419. In any event, we note that Parrott testified that she "barely touched" the crack cocaine offered by Wells that night, and she denied being "high" at the time of the offense. In addition, Wells testified that she had a high tolerance for alcohol, and she denied using any drugs before she went to see Fultz at Parrot's apartment that night.[3]

Further, Parrott's and Wells's accounts were consistent, and they were corroborated by other evidence. Wells and Parrot both testified about Wells's visits to Parrott's apartment on the night of the robbery. Wells testified that she used her cellular telephone to communicate with Coleman and Regains on the night of the robbery, Parrott testified that she saw Wells using her cellular telephone while she was at the apartment before the robbery, and cellular telephone records corroborated that Wells communicated with both Coleman and Regains that night. Coleman's involvement in the offense was further supported by the testimony of Deandre Driver and Deshawn Leath, each of whom testified that Coleman made statements to them in which Coleman admitted his involvement in an offense similar to that described by Wells. Leath testified that Coleman admitted shooting a man during the offense and that items taken were "a few 8 balls, couple ounces of weed, and some money."

---

[3] Coleman makes reference to Wells having consumed substances before her interview with police. We note that Wells described her state on the date of the interview as merely "buzz[ed]." At any rate, this interview was conducted well after the events in question, and Wells testified at trial, in person.

In addition, Wells testified that both defendants retrieved guns from underneath the hood of a car before the two defendants went into the apartment building. Testing of the two bullet fragments recovered from Fultz's body indicated that the bullets were fired by two different weapons. This evidence allowed the jury to infer that both defendants were armed during the offense and that each defendant shot Fultz.[4]

The prosecution presented sufficient evidence to establish defendants' guilt of the charged crimes beyond a reasonable doubt.[5]

---

[4] Coleman points out that Parrot was not able to identify the two robbers, and that Wells was not present inside the apartment during the offenses. Coleman is potentially suggesting that the evidence therefore failed to show what role he may have played during the events. Even disregarding that Coleman's appellate arguments are focused on identity, we note for the sake of completeness that there was sufficient evidence regarding his role. "The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated . . . ." *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999) (quotation marks and citation omitted). "The facts and circumstances of the killing may give rise to an inference of malice." *Id*. "A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *Id*. "Malice may also be inferred from the use of a deadly weapon." *Id*.

As previously indicated, Wells testified that both defendants were armed with guns when they entered the apartment building. The medical examiner recovered two bullets from Fultz's body, and ballistics testing of those bullets showed that they were fired by two different guns. Consistent with this evidence, Leath testified that Coleman told him that, during the incident, the victim began "tussling" with Coleman's cousin, so Coleman shot the victim. Leath also testified about the items taken. The evidence as a whole was sufficient to enable the jury to find beyond a reasonable doubt that Coleman committed a home invasion and armed robbery and killed Fultz during the commission of a larceny, and that Coleman acted with the requisite malice to be guilty of felony murder. Similarly, Wells's testimony that both defendants were armed with guns when they entered the apartment building, and the ballistics evidence that Fultz was shot by bullets fired from two different guns, support Regains's convictions.

[5] We reject Coleman's very cursory argument that the verdicts were against the great weight of the evidence.

## II. PHOTOGRAPHIC EVIDENCE

Both defendants argue that the trial court erred in admitting several photographs of the crime scene, which included photos of the victim's naked body, as well as photographs taken during the victim's autopsy. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. at 722-723.

"Photographs are admissible if substantially necessary or instructive to show material facts or conditions." *People v Hoffman*, 205 Mich App 1, 18; 518 NW2d 817 (1994). "If photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they vividly portray the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors." *Id*. Whether relevant photographic evidence should be excluded depends on whether the probative value of the photographs is substantially outweighed by the danger of unfair prejudice. *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Photographs that depict the gruesome nature of the crime and are not pertinent, relevant, or material to any issue in the case, but serve only to inflame the jurors' minds and prejudice them against the defendant, should be excluded. *Id*. at 76-77.

Having reviewed the challenged photographs, we cannot conclude that the trial court abused its discretion in allowing their admission. An evidence technician referred to the photographs of the crime scene in his testimony, and the medical examiner referred to the autopsy photographs in his testimony. Autopsy photographs are considered relevant when they are instructive in depicting the nature and extent of the victim's injuries. *People v Flowers*, 222 Mich App 732, 736; 565 NW2d 12 (1997). Moreover, "[p]hotographs are not excludable simply because a witness can orally testify" about the same information; photographs may be admitted to corroborate a witness's testimony. *Mills*, 450 Mich at 76.

Further, we are not persuaded that the probative value of the photos was substantially outweighed by the danger of unfair prejudice under MRE 403. The record discloses that the trial court took care to exercise its discretion in deciding whether to admit the photographs; it did exclude some photos that were offered by the prosecution. The photographs that were admitted were not overly gruesome or bloody. Although two crime scene photographs depict the victim's genitals, those photographs were taken from a distance and were relevant to show how the victim was found at the scene. Because those two photographs were taken from different angles, they were not required to be excluded on the ground that they were cumulative. In sum, the trial court did not abuse its discretion by admitting the challenged photographs.

## III. DEFENDANT COLEMAN'S STANDARD 4 BRIEF

Defendant Coleman raises an additional issue of prosecutorial misconduct in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. He argues that the prosecutor misstated the evidence in both her opening statement and closing argument, which denied him a fair trial. Because Coleman did not object to any of the challenged statements at trial, his claims are unpreserved. We review unpreserved claims of

prosecutorial misconduct for plain error affecting substantial rights. *People v Abraham,* 256 Mich App 265, 274; 662 NW2d 836 (2003). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355-356; 662 NW2d 376 (2003). This Court will not reverse if the prejudicial effect of any improper comment could have been cured by a timely instruction from the trial court. *People v Joezell Williams II*, 265 Mich App 68, 70-71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006).

Claims of prosecutorial misconduct are decided case by case and the challenged comments must be read in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). A prosecutor is afforded great latitude when making arguments at trial, and the prosecutor is permitted to argue the evidence and reasonable inferences arising from the evidence in support of her theory of the case. *Id*. at 282.

Coleman argues that the prosecutor misstated the evidence in her opening statement when she stated that Parrott would describe the vehicle that Wells arrived in as a *four-door* vehicle.[6] Coleman correctly observes that, at trial, Parrott testified that Wells arrived in a gray *two-door* vehicle. Parrott also testified that when Wells left the first time, she got into the same *two-door* vehicle. "[T]his Court has held that when a prosecutor states that evidence will be submitted to the jury, and the evidence is not presented, reversal is not warranted if the prosecutor did so acting in good faith." *People v Wolverton*, 227 Mich App 72, 75; 574 NW2d 703 (1997). In this case, although Parrott's description of the vehicle associated with Wells varied from the description offered by the prosecutor in her opening statement, there is no indication that the prosecutor acted in bad faith by referring to the vehicle that Wells arrived in and returned to as a four-door vehicle, inasmuch as other evidence established that Coleman's vehicle, a silver Buick, was a four-door model. Moreover, Coleman was not prejudiced by the misstatement because the number of doors was a minor detail in the context of this case. The significance of Parrot's testimony was that she saw Wells arrive and leave in the same vehicle, which Wells testified belonged to Coleman. In addition, the trial court later instructed Coleman's jury that "[t]he lawyers' statements and arguments are not evidence" and that the jury "should only accept things the lawyers say that are supported by evidence . . . ." These instructions were sufficient to protect Coleman's substantial rights.

Coleman's next claim relates to the prosecutor's discussion of "physical evidence" at the crime scene. However, the challenged remarks were made only to the Regains's jury, and therefore could not have prejudiced Coleman. Looking at comparable remarks to Coleman's jury, the prosecutor did not misstate the evidence by stating that the two bullets removed from Fultz's body came from two different guns, because the prosecution's firearm expert testified

---

[6] We note that Coleman erroneously cites excerpts from the prosecutor's opening statement and closing arguments to Regains's jury in support of his arguments on appeal. We have reviewed Coleman's claims by considering the prosecutor's comparable statements to Coleman's jury.

that ballistics testing confirmed that the bullets were fired by two different firearms. Further, because Wells identified the two robbers as Coleman and Regains, it was reasonable for the prosecutor to infer that Coleman and Regains were the two shooters.

Coleman also argues that the prosecutor improperly stated in her closing argument that "Johnnie Mae tells us that she sees and she hears the victim rush at Mr. Coleman." Coleman argues that this statement is inaccurate because Parrott could not identify either of the two men. However, the prosecutor's comments reflect her argument that Coleman was the suspect Parrott described as fighting with Fultz. The prosecutor was permitted to argue from the evidence that Coleman was the suspect who fought with Fultz. To the extent that the evidence could be viewed differently, the trial court's instructions that "[t]he lawyers' statements and arguments are not evidence" and that the jury "should only accept things the lawyers say that are supported by evidence . . . ." were sufficient to protect Coleman's substantial rights.

Coleman also argues that the prosecutor misstated the evidence during closing argument when she stated that Parrott testified that "when I look out, I see her [Wells] associated with this gray car," which the prosecutor had earlier said was Coleman's "little gray Buick." There was nothing improper about this argument because Parrott testified that Wells arrived in and left in the same vehicle, which was the same vehicle the two suspects entered when they fled the building after the robbery, and Wells testified that the vehicle was Coleman's car.

Coleman argues that the prosecutor also improperly referred to physical evidence of the shooting in her closing argument when she stated that both defendants shot the victim. Coleman argues that this argument was improper because the firearms expert admitted that he could not say who shot the victim. However, the prosecutor properly argued that the evidence supported that both defendants shot Fultz. She stated:

> What's important about these bullets is that we know that it's both defendants who were shooters. It wasn't just one person who was pulling the trigger. We know that it was two people that were pulling the trigger.

The prosecutor discussed the firearm expert's testimony about the differences between the two bullets that were recovered from the victim. From that evidence, the prosecutor theorized as follows:

> So what does that tell us? We know that there are two different guns that were being fired into Mr. Fultz the night of December 28th showing that there were two people there both firing their weapons, both intending to kill Mr. Fultz.

Again, the prosecutor's argument is supported by the ballistics evidence, which indicated that the two bullets recovered from the victim were fired by two different firearms. It was reasonable to infer from the evidence that two different people shot the victim, and that those people were Coleman and Regains. Accordingly, the remarks were proper.

We affirm in both appeals but remand in Docket No. 330129 for the ministerial task of correcting the judgment of sentence.

/s/ Jane E. Markey
/s/ Patrick M. Meter
/s/ Douglas B. Shapiro